HATTIE A. DENNY, ADMINISTRATRIX, v. CITY OF BURLINGTON.

(Filed 19 April, 1911.)

1. Appeal and Error — Instructions — Verdict Directing—Evidence, How Considered.

In passing upon the correctness of a peremptory instruction given by the trial judge to the jury to find for the defendant upon the evidence, the latter will be construed in the most favorable view for the plaintiff.

2. Master and Servant—Contracts—Independent Contractor.

When one contracts with another that the latter shall do a certain work in accordance with plans and specifications furnished him, the work not being intrinsically dangerous, and there being no suggestion that the contractor was incompetent to do it, and the contractee retains or assumes no control of the methods by which it is to be done or of the workmen employed to do it, and the contractor has the sole right to employ and discharge the workmen in pursuance of doing or completing the work contracted for, the relation of independent contractor is established, and the contractee is not responsible in damages for an injury to one of the workmen alleged to have arisen from a tort committed by the contractor. *Craft v. Lumber Co.*, 132 N. C., 151, cited and approved.

3. Same—Torts — Independent Control — Inspection—Suggestion of Supervisor—Liability.

When the relation of independent contractor has been established and the work is to be done according to plans and specifications furnished, the mere fact that a supervisor of the contractee is present for the purpose of seeing that the work is being done according to the contract, at the time the tort complained of is committed, does not render the contractee liable therefor; nor is the contractee liable for mere suggestions made by his supervisor without authority and with relation to the work or workmen over whom he has no control, and in the performance of which work the contractee is interested only to the extent that it shall be done in accordance with his contract.

4. Same—Cities and Towns—Reservoir—Civil Engineer.

The plaintiff's intestate was killed while at work on a reservoir which the city had contracted to be built. The evidence tended to show that the contractor was to complete the reservoir for a certain sum under the plans ahd specifications furnished by the

155—3

city, and the contractor had sole authority to hire and discharge the workmen employed thereon, and was required to do the work according to the plans and specifications; that the city engineer was frequently present while the work was being done, in order to see that it was done in accordance with the contract, and for that purpose only gave directions in regard to it. *Held*, an instruction was proper that if the jury found the facts to be as testified to, the relation of independent contractor was established, and that the city was not responsible for the tort complained of in not sufficiently curbing the walls of the reservoir when the plaintiff was at work therein.

**5. Same—Ratification.**

A person who undertakes to act for another without any authority to do so cannot generally render such other liable for his unauthorized torts unless his acts are ratified, and a city cannot be held responsible for the torts of its civil engineer who, without authority, gives directions in the progress of work the city has contracted with an independent contractor to do, and concerning which the city could not otherwise be charged, the only duty of the engineer being to see that the contract is being properly carried out.

APPEAL from *Biggs, J.,* at the January Term, 1911, of ALA-MANCE.

The plaintiff sues to recover of the defendants the sum of $25,000 for the death of her intestate, alleging that his death was caused by the negligence of the city and its agents and servants, the defendants Russell and Harris, and that the negligence consisted in not providing a safe place for intestate to work while in the employ of the defendant, the city of Burlington, and while engaged in the work of building a reservoir for sewerage purposes. She alleges that this negligence consisted in not sufficiently curbing the walls of the reservoir while intestate was working therein.

The defendant city of Burlington, answering, denied all allegations of negligence, and averred that the work in which the intestate of plaintiff was engaged at the time of the accident, resulting in his death, was being done and performed by the defendants Russell and Harris, as independent contractors of the defendant city of Burlington, and attached to said answer the written contract between the city and Russell and Harris.

The city further sets up the defenses of assumption of risk and contributory negligence on the part of the intestate of plaintiff.

Plaintiff introduced one W. C. Dameron, who testified as follows: "I was present when the bank caved in and the plaintiff's intestate was killed thereby. A. F. Barrett, the mayor of Burlington, and J. L. Scott, an officer of said city, had been about the pit one hour before the cave-in occurred. Mr. Kueffner was there inspecting the work. There was a dispute between Mr. Stevens, an engineer, and Mr. Rodden, a foreman of defendant Russell, as to the manner of mixing certain concrete. I was there at the request of Russell, and Rodden was directing the work as foreman of the defendants Russell and Harris. Rodden (foreman of Russell and Harris) directed plaintiff's intestate Denny to do the exact work he was doing at the time of the cave-in by which Denny sustained the injury that killed him."

W. C. Johnson, plaintiff's witness, testified: "I was in the reservoir when cave-in occurred, and was employed by defendant Russell and paid by Russell. Denny was paid off at the same time and by the same person I was."

L. J. Rodden, for plaintiff, testified: "I was employed to work as foreman on the reservoir at Burlington by Russell and Harris. Mr. Kueffner was there and giving directions as to placing concrete. I was employed by Russell and Harris as foreman of this work, and Mr. Kueffner simply did the locating as to where concrete was to go, and observed the mixing of concrete. Russell paid for the material and I, as foreman, hired Denny and Russell paid him. I directed Denny to do the work he was doing at the time of the accident. I had power to discharge Denny."

A. F. Barrett, for plaintiff, testified: "I was mayor of Burlington at the time of the accident. The city of Burlington had an engineer directing the work of putting in its waterworks named Gilbert C. White, and Mr. White had two assistants, one named Stephens and one named Kueffner." He proved the execution of the original contract, it being Exhibit A annexed to the answer, as the contract under which this work was done by Russell and Harris.

Defendant city of Burlington introduced in evidence the contract, Exhibit A annexed to answer, and also introduced evidence showing that White, its general supervising engineer, had only instructed Kueffner to exercise such oversight over the work as to see that it was done according to contract. Defendant city further introduced evidence as to what Kueffner did in inspecting this work. There was further evidence introduced showing the manner in which the accident occurred.

At the close of all the evidence, his Honor intimated that he would instruct the jury, if they found the facts to be as testified by the witnesses, to answer the issues, as to the liability of the city, in its favor. The plaintiff, in deference to this instruction, submitted to a nonsuit as to the city. Plaintiff entered a nonsuit as to the defendants Russell and Harris, excepted to the judge's charge, and appealed from the judgment rendered upon the verdict, which was in favor of defendant.

*Long & Long and R. C. Strudwick for plaintiff.*
*W. H. Carroll and Parker & Parker for defendant.*

WALKER, J. If we concede that the plaintiff has sufficiently alleged and shown that the death of Denny, plaintiff's intestate, was caused by a negligent or wrongful act of Russell and Harris, and that there is no evidence of assumption of risk or contributory negligence on the part of Denny, we are yet of the opinion that the charge of the court was right, in view of the evidence, even when construed and considered in its most favorable aspect for the plaintiff, which is the settled rule by which we must be governed in passing upon the correctness of such a peremptory instruction as that given in this case. The defendant, city of Burlington, wishing to construct a reservoir for municipal purposes, in connection with its system of sewerage, employed Russell and Harris to do the work under a written contract, not set out, as we deem it unnecessary to do so, which by its very terms constituted Russell and Harris independent contractors in their relation to the city, as much so as did the contract in *Young v. Lumber Co.,* 147 N. C., 26, and *Gay v. Lumber Co.,* 148 N. C., 336. In the former case, *Justice Connor* quoted with approval the following definition of an independent contractor, taken from *Craft*

*v. Lumber Co.,* 132 N. C., 151: "When the contract is for something that may be lawfully done, and it is proper in its terms, and there has been no negligence in selecting a suitable person in respect to it, and no general control is reserved, either in respect to the manner of doing the work or the agents to be employed in doing it, and the person for whom the work is to be done is interested only in the ultimate result of the work and not in the several steps as it progresses, the latter is not liable to third persons for the negligence of the contractor as his master." And in *Gay v. Lumber Co., supra,* it is said that, "An independent contractor is one who undertakes to produce a given result, but so that in the actual execution of the work he is not under the order or control of the person for whom he does it, and may use his own discretion in things not specified," citing Pollock on Torts, 78; Barrow on Negligence, 160, and the Court also adopts the definition as given in *Craft v. Lumber Co.,* and afterwards approved in *Young v. Lumber Co., supra.* The doctrine relating to the non-liability of a person who employs an independent contractor to do work for him and the limit to the exemption, is fully considered in the following cases, in addition to those already cited: *Davis v. Summerfield,* 133 N. C., 325; *Midgette v. Mfg. Co.,* 150 N. C., 333; *Hunter v. R. R.,* 152 N. C., 682; and it is exhaustively and learnedly discussed in two recent cases, *Thomas v. R. R.,* 153 N. C., 351 (opinion by *Justice Manning*), and *Beal v. Fibre Co.,* 154 N. C., 147 (opinion by *Justice Hoke*). Reference to these cases will disclose that the subject has been considered by this Court in all of its essential features and varying phases. But to decide this case, we need only advert to the general principle, with its usual qualifications or exceptions, which are that the work must not be intrinsically dangerous (if this applies to a servant of a contractor and not merely to third persons, not interested in or connected with the work), and the employer must not retain control or supervision of the work. It would perhaps be more accurate to say that these requirements are rather a part of the definition than qualifications of it. We think the contract between the defendant and Russell and Harris, the contractors, was a perfectly lawful and proper one, and that the work was

not intrinsically dangerous, so that the case is brought to the other test, whether the city reserved such control over the work in its several and successive stages, as to create the relation of master and servant, as between it and Denny, and to deprive it, consequently, of any immunity from responsibility to the plaintiff for the value of his life, if his death was caused by its negligence or the negligence of any other person imputable to it. It will be well, therefore, to add to the citations from our own reports, two or three from other jurisdictions, where the law in respect to this particular branch of the rule has been aptly stated: "When one contracts to do and deliver certain specific work, which is not unlawful, and the manner of the doing of which, including the employment, payment and control of the labor, is left entirely to him, he is an independent contractor, for whose acts and omissions in the execution of such contract the other contracting party is not liable, since the doctrine of *respondeat superior* has no application where the employee represents the employer only as to the lawful purpose of the contract, but does not represent him in the means by which that purpose is to be accomplished." *Robideaux v. Herbert* (118 La., 1089), 12 L. R. A. (N. S.), 632.

"The accepted doctrine is that, in cases where the essential object of an agreement is the performance of work, the relation of master and servant will not be predicated, as between the party for whose benefit the work is to be done and the party who is to do the work, unless the former has retained the right to exercise control over the latter in respect to the manner in which the work is to be executed." *Richmond v. Sitterding* (101 Va., 354), 65 L. R. A., 447, and notes.

"One who contracts to construct bridge abutments according to plans and specifications already prepared for one who has taken the contract for the construction of the bridge, is an independent contractor, for whose acts the employer is not responsible, although his agent exercises some kind of general supervision for the purpose of seeing that the work is done according to the contract." *Salliotte v. Bridge Co.* (58 C. C. A., 466), 65 L. R. A., 620.

We have carefully examined and analyzed the evidence in

this case and can find none legally sufficient to show that the defendant, at any time during the progress of the work, assumed control thereof or of any part of it.   There are to be found, to be sure, expressions from witnesses to the effect that Kueffner, the city engineer, was present now and then when the work was going on, but when the evidence touching upon this feature of the case is justly and properly considered, it amounts to no more than proof that he was there, in the interest of the city and under instructions from it, for the purpose of seeing that the work was done according to the contract, and not to give any instructions as to how it should be done or to supervise or · control it.   He made a suggestion, it is true, as to how some of it should be done, but it was not made while in the exercise of any power or control over those doing the work, and was merely the gratuitous expression of an opinion, which any outsider might have given, and it was entirely optional with Rodden, foreman of Russell and Harris, whether to adopt or accept this advice which related to the concrete work.   Counsel for the plaintiff, in his able argument, relied on the authority of Lawson, in his work on Rights, Remedies and Practice, Vol. I, sec. 299, where it is said: "The proprietor may make himself liable by retaining the right to direct and control the time and manner of executing the work or by interfering with the contractor and assuming control of the work, or of some part of it, so that the relation of master and servant arises, or so that an injury ensues which is traceable to his interference."   But Lawson supplements that statement with these words, which more significantly and peculiarly apply to the facts of this case: "But merely taking steps to see that the contractor carries out his agreement, as, having the work supervised by an architect or superintendent, does not make the employer liable, nor does reserving the right to dismiss incompetent workmen."   So it is said in the note to that section, that if the owner of a building deals with the contractors, with reference to the manner of doing the work, in such a way "that in doing any particular act they are obeying the directions of the owner, if that act is negligent and damage ensues, he is liable.   In such a case, it is his duty to see that what is done under his special orders is not negligently done," citing *Hefferman v.*

*Benkard,* 1 Robt., 436. But this record does not contain any evidence for the jury that the city, through its engineer, assumed to control the work or any part of it, and that the intestate's death was caused thereby. The only supervision that the city retained was that required to protect its interests and insure a compliance with the contract in the completed work. This supervision was necessary, as a part of the work would be hidden when it was finished. The defendant's engineer was nothing more than an inspector, whose duty it was to inform his employee when there was any departure from the plans and specifications in doing the work. The right to control the work and direct how it should be done was vested in Russell and Harris, and none in the city. "The simple test is," says Mr. Wood, "who has the general control over the work? Who has the right to direct what shall be done, and how to do it? And if the person employed reserves this power to himself, his relation to his employer is independent, and he is a contractor; but if it is reserved to the employer or his agents, the relation is that of master and servant." Wood on Master and Servant, 614. Again it is said: "All authorities agree that the immunity of a contractee depends on his entire abstinence from control, and that if he personally interferes in the work and assumes control of it or of some part of it, and through such interference, whether as a direct result or as a consequence thereof, injury results to a servant, he is responsible. 2 Thompson on Negligence, 913, No. 40; Wood on Master and Servant, 837; Wharton on Negligence, secs. 186, 205; Cooley on Torts, 548; *Gilbert v. Beach,* 16 N. Y., 608; *Hefferman v. Benkard,* 1 Robt., 432." Applying these tests to our case, we must conclude upon the evidence, and as a necessary deduction therefrom, that there is no liability on the part of the city for the death of plaintiff's intestate, and this conclusion is supported by the following authorities: *Nevins v. City of Peoria,* 41 Ill., 505; *Kelleher v. Mfg. Co.,* 122 Mass., 635. The case of *Harrison v. Kiser,* 4 S. E. Rep. (Ga.), 320, expressly holds that "the employer's agent may supervise the work, for the mere purpose of seeing that it is done in conformity with the contract, without render-

ing him liable." And it is also held in *Bibb v. R. R.,* 87 Va., 711, that, "Where an employer selects with due care a competent contractor, and to him commits a work that is lawful, and such as may be done without injury to third persons, and to be done in a workmanlike manner, at a stipulated price, such employer cannot be held liable for injuries caused by the negligence of such contractor or his servants to third persons, not servants of such employer nor passengers on his cars. An independent contractor is one who renders service in the course of an occupation, and represents the will of his employer only as to the result of his work, and not as to the means whereby it is accomplished, and is usually paid by the job. The reservation to the employer of the privilege of inspecting and supervising the work of the contractor does not destroy or impair his character as an independent contractor. The rule of *respondeat superior* applies only to cases where the relation of master and servant exists, and does not apply as between an employer and the servants of an independent contractor. And the same is true of the rule of *qui facit per alium, facit per se.*" In the recently published treatise upon this subject, this rule is stated: "A true test is said to be to ascertain whether the one rendering service to another does so in the course of an independent occupation, representing the employer's will only as to the result and not as to the means. In a recent Massachusetts case (*Driscoll v. Towle,* 181 Mass., 416), it is said: 'In such cases the party who employs the contractor indicates the work to be done and in that sense controls the servant, as he would control the contractor if he were present. But the person who receives such orders is not subject to the general orders of the party who gives them. He does his own business in his own way, and the orders which he receives simply point out to him the work which he or his master has undertaken to do. There is not that degree of intimacy and generality in the subjection of one to the other which is necessary in order to identify the two and to make the employer liable under the fiction that the act of the employed is his act.' " Moll on Independent Contractors and Employers' Liability, sec. 20.

There is no suggestion in the case, nor was there in the argument before us, that Russell and Harris were incompetent, nor that the city was negligent in any way other than that already stated.

It should be remarked that the court did not nonsuit the plaintiff, but intimated merely that it would tell the jury that if they found the facts to be according to the testimony, their verdict should be for the defendant. There was uncontroverted evidence for the defendant that Keuffner was not authorized by the city to take any charge or control of the work or any part of it. A person who undertakes to act for another without any authority to do so cannot, generally render such other liable for his unauthorized torts unless his acts are ratified. This is a self-evident proposition. *Norwalk Gaslight Co. v. Norwalk,* 63 Conn., 495. But, as we have shown, Keuffner did not interfere with the work in such a way as to charge his principal, even if he had authority to act for it. "The mere fact that a servant is sent to do work pointed out to him by a person who has made a bargain with his master does not make him that person's servant. More than that is necessary to take him out of the relation established by the only contract which he has made, and to make him a voluntary subject of a new sovereign—as the master sometimes was called in the old books." *Driscoll v. Towle, supra.*

In no reasonable view of the case was plaintiff entitled to recover of this defendant, and the charge of the court was, therefore, right.