ALLEN and HOKE, JJ., concurring; CLARK, C. J., dissenting.
The facts are sufficiently stated in the opinion of the Court by MR. JUSTICE WALKER.
This action was brought by the plaintiff to recover damages for injuries received while uncoupling an air-hose between two cars, and which he alleges were caused by the negligence of the defendant. The rules of the railroad company prohibited employees from going between cars, while in motion, for the purpose of coupling or uncoupling cars, and plaintiff was aware of this rule at the time of the accident, and knew that he was also forbidden by it to go between cars, while in motion, even by the order of the conductor. He testified that when he was ordered to uncouple cars it was his duty to wait until the train had stopped, and then execute the order. He was ordered by the conductor to uncouple the cars, but knew, as he stated, (358) that he was to do so only when the cars had stopped. He also knew that he was not bound or permitted to obey an order to uncouple cars when moving, and he was fully protected by the rules in refusing to do so, and he testified that he would not have obeyed such an order and he did not receive any such order, but he was ordered to uncouple after the cars had stopped. He further testified that the cars had come to a full stop when he went between the cars to uncouple. While performing his duty, the cars were started, and his left hand was caught between the dead blocks or bumpers and crushed. This was his version. The defendant alleged and offered evidence to show that the cars were in motion when he attempted to uncouple, and he was hurt by this movement of the cars, and not by starting them after they had stopped. So that the issue was squarely made, whether he was injured by the starting of the cars after they had once stopped or by going between moving cars. The plaintiff had agreed in writing to abide by the rules of the company and observe the same while in the discharge of his duties, and not to hold the company liable for any injuries to himself resulting from his own disobedience or infraction of the rules. Upon this state of facts the court charged the jury, with reference to the first issue, as follows: "It is the duty of an employee of a railroad company to obey the orders and directions of the master, and if you should find by the greater weight of the evidence in this case that W. R. Murray was acting as yardmaster for the defendant's lessee, as alleged in the complaint, and was engaged in making up a train of cars in the defendant's yard in or near the city of Charlotte on 2 December, 1910, and that while thus engaged he ordered the plaintiff, who was an employee of the defendant's lessee, to go between two of the cars and to cut off or uncouple the air-hose attached to said cars, and if you should further find that the plaintiff, in obedience to said order, went between the cars, and while he was between the cars, and in the act of uncoupling the air-hose, the defendant's lessee jerked or shoved the train and injured the plaintiff, as alleged, the court instructs you that this would be negligence on the part of the defendant's *Page 290 
(359) lessee, and you should answer the first issue `Yes.'" We think that this instruction was erroneous in two respects. It authorized the jury to find that there was negligence if the plaintiff went between the cars to uncouple the air-hose, while the train was in motion and in disobedience of the rule, and was thereby injured, whereas the defendant, by its rule or regulation, had provided a perfectly safe way for the work to be done, that is, by waiting until the cars had stopped, when it was the duty of the engineer to protect him and not to move the train until he had uncoupled the hose and notified the engineer of the fact by the proper signal. It will be observed that the court, in the instruction, makes no distinction between uncoupling when the cars were in motion and when they were not. Besides, the jury could have answered the first issue in the affirmative, if they had found that his going between the cars in obedience to an order was not the proximate cause of his injury. In this respect a similar instruction has been condemned by this Court. Edwards v.R. R., 129 N.C. at marge. p. 81. There was no reference in the instruction to proximate cause, the charge being that negligence on the part of the defendant was, of itself, sufficient to warrant a finding for the plaintiff on the first issue.
The court charged the jury, upon the second issue, as follows: "The second issue is, `Did the plaintiff, by his own negligence, contribute to his injury, as alleged in the answer?' Now, if you find from the evidence, by the greater weight thereof, the burden being on the defendant to so satisfy you, that the plaintiff was guilty of contributory negligence in that he went between the cars when they were moving, and attempted to release the air-brakes, and you find that the going between the cars, while they were moving, was the proximate cause of the injury complained of, then you will answer the second issue `Yes'; otherwise, you will answer it `No.'" The jury returned a verdict for the plaintiff, and judgment having been entered thereon, defendant appealed.
We think the charge upon the issue as to contributory negligence was erroneous, and the judge should have told the jury that if the plaintiff was injured because he went between the cars, while in (360) motion, to uncouple, in disobedience of the rule, it was, in law, the proximate cause of his injury, which could not be imputed to the negligence of the company, but to his own carelessness and deliberate violation of the rule which was made for his protection. It is plain that if the cars were moving, the plaintiff's injury was caused solely by his disobedience of the rule, in trying to uncouple the hose when the cars were thus moving. Nothing done by the engineer in the movement of the train, if it caused the injury, would be negligent as it was not expected that the plaintiff would go between the cars while they were moving, and jerks will frequently occur in such cases. If the engineer *Page 291 
knew he was between the cars, even though they were moving, and did something willfully and for the purpose of injuring him, or even negligently, a different question would be presented, but there is no such evidence in this case. The plaintiff was injured by the starting of the cars, when he was between them for the purpose of uncoupling the hose, according to his contention, or he was injured by his own folly and disobedience of the rule in going between the cars when they were moving. In the latter case the law refers the injury to the plaintiff's own negligent and disobedient act.
In Stewart v. Carpet Co., 138 N.C. 60, discussing a similar question, we said: "It follows that if the jury had taken the defendant's view of the evidence and found that plaintiff was, at the time of his injury, acting in disobedience of orders, no negligence could be imputed to the defendant, even if the elevator was defective, as defendant omitted no duty to the plaintiff in respect to its condition, as we have stated, and the plaintiff's own act in disobeying instructions would, in law, be regarded as the proximate and, indeed, the only cause of his injury. The defendant was entitled to have this view of the case submitted to the jury, but the charge of the court excluded it." And in Whitson v.Wrenn, 134 N.C. 86, the same principle is stated, as follows: "Instead of the plaintiff having been commanded to do a dangerous act, it is assumed in the instruction, and there was evidence to show, that he was ordered to do the particular work assigned to him in a safe way, but elected to do it in his own way, which turned out to be a dangerous one, and which actually resulted in his injury. The (361) law, under such circumstances, refers the injury to his own fault, and not to any wrong on the part of his employer."
It has been held directly in other jurisdictions that, if an employee attempts to couple or uncouple cars while they are in motion, in violation of the company's rules, which are known to him and which provide a safe way for doing the work, and is injured, he is guilty of such negligence as bars his recovery of damages. Sedgwick v. R. R., 76 Iowa 340; Darracott v. R.R., 83 Va. 288; Johnson v. R. R., 38 W. Va. 206; Fennill v. R. R.,129 N.Y., 669.
In Johnson v. R. R., supra, the Court said: "It appears from the plaintiff's own testimony that, if he did not in fact read the rule of the company, he frequently had it in his hands with opportunity to read it, and from the testimony of one of his witnesses, that `men are always notified not to go in between the cars to uncouple, while they are in motion, and that it is unnecessary, and obviously dangerous at all times'; and it it is equally clear from plaintiff's own testimony, and that of his witnesses, that his violation of this rule was the proximate cause of his injury, without which it would not have happened. To *Page 292 
hold otherwise would be giving a party the advantage of his own wrong." See, also, Mason v. R. R., 111 N.C. 499, and 114 N.C. 724.
He was not ordered to uncouple while the cars were in motion, but to do so after they had stopped; there was not any defect in the construction of the cars, if that would make any difference in this kind of case; the plaintiff knew that he had been forbidden to uncouple the angle cock or the hose while the cars were moving, and that it was dangerous to do so, and he would not have done so because of the danger and the rule of prohibition. This is his own testimony. The question of fact, as to whether he attempted to uncouple the cars while they were in motion, or when they were at rest, was one for the jury.
The error in the instruction of the court consists in leaving to the decision of the jury, as a question of fact, whether, if he attempted to uncouple moving cars, his disobedience of the rule was the proximate cause of the injury, as it was plainly so as matter of law. If (362) his testimony is accepted as true, he was not ordered to go between moving cars, but to wait until the cars had stopped; so that it necessarily follows that the engineer and conductor did not know he was between the cars while they were in motion, and there is no evidence that they did. How, then, could they be guilty of negligence with respect to him? By his own words, he had assumed a perilous position, if he violated the express order and went between moving cars, and his own confessed negligence was not only the proximate cause, but the sole cause of his injury. This is in accordance with reason and the acknowledged rule of law. It is not opposed to the precedents nor does it violate any statutory provision or change the burden of proof as fixed by law.
There was error in the following instruction as to damages: "If you find that he has been permanently injured, and that such injury partially incapacitates him to earn money, then he would be entitled to recover damages for partial incapacity, if you find the injury was caused by the negligence of the defendant. He would be entitled to recover the difference between what he is able to earn at the present time, and in the future, and what he would have been able to earn if the accident had not happened; and passing upon his expectancy, the mortuary table has been read to you, and you will bear that in mind in awarding damages, if you find that the plaintiff is entitled to recover anything." In an action for injuries by negligence, such as this one, the plaintiff is only entitled to recover the reasonable present value of his diminished earning power in the future, and not the difference between what he would be able to earn in the future, but for such injury, and such sum as he would be able to earn in his present condition. R. R. v. Paschall, 41 Tex. Civ. App. 357. Where future payments for the loss of earning *Page 293 
power are to be anticipated by the jury and capitalized in a verdict, the plaintiff is entitled only to their present worth. Goodhardt v. R. R., 177 Pa. St., 1. The damages to be awarded for a negligent personal injury resulting in a diminution of earning powers is a sum equal to thepresent worth of such diminution, and not its aggregate for plaintiff's expectancy of life. O'Brien v. White, 105 Me. 308. The rule, as we see, may be stated with varying phraseology, but they all (363) carry the same idea, that the estimate should be based upon the present value of the difference between plaintiff's earning capacity, and not the total difference caused by the injury. The rule is supported by many authorities in this and other jurisdictions. Pickett v. R. R.,117 N.C. 616; Wilkinson v. Dunbar, 149 N.C. 20; Benton v. R. R.,122 N.C. 1007; Watson v. R. R., 133 N.C. 188; R. R., v. Carroll, 184 Fed., 772; Fulsome v. Concord, 46 Vt. 135; Kenny v. Folkerts,84 Mich. 616.
Nothing said in this opinion conflicts with the decision in Boney v. R.R., 155 N.C. 95, as in that case it was adjudged that the defendant had the last clear chance to avoid the injury to the plaintiff, by displaying the proper signal at the switch, notwithstanding any negligence of the plaintiff in disobeying the rule of the company which limited the speed of the train at the place of the accident to six miles an hour.
New trial.