These were civil actions consolidated and tried by consent at September Term, 1914, of the Superior Court of Henderson County. The actions were brought for the purpose of recovering damages for the *Page 509 
alleged negligent killing of plaintiff's intestates, which was caused by the falling of the wall of a dry-kiln of the defendant. It was admitted in the answer and also upon the trial that the intestates were killed by the falling of the wall. The defendant denied the allegations of negligence, pleaded assumption of risks, and alleged that the intestates were employees of Jesse V. Allen, an independent contractor. The following is the verdict of the jury:
1. Were the plaintiffs' intestates, Fred Embler and Carlton Miller, in the employ of J. V. Allen, an independent contractor, as alleged by the defendant's answer? Answer: "No."
2. Were the plaintiffs' intestates, Fred Embler and Carlton Miller, in the employ of the defendant Gloucester Lumber Company at the time alleged in the complaint? Answer: "Yes."
3. Were the plaintiffs' intestates, Fred Embler and Carlton (459) Miller, killed by the negligence of the defendant Gloucester Lumber Company, as alleged in the complaint? Answer: "Yes."
4. What damage, if any, is the plaintiff J. P. Embler, administrator of Fred Embler, entitled to recover of the defendant Gloucester Lumber Company? Answer: "$3,645.83."
5. What damage, if any, is the plaintiff B.R. Staton, administrator of Carlton Miller, entitled to recover of the defendant Gloucester Lumber Company? Answer: "$3,253.43."
Judgment for the plaintiffs was entered thereon, and defendant appealed to this Court.
The real and essential question in this case is whether Jesse V. Allen, at the time of the accident which caused the death of plaintiffs' intestates, was an independent contractor and chargeable with sole responsibility therefor.
The defendant requested that several instructions be given to the jury which in substance were equivalent to a motion to nonsuit or a peremptory direction to find for the defendant. We will so consider them, without reproducing them severally here. If there was evidence that Jesse V. Allen was not an independent contractor, the instructions should not have been given, and, therefore, were properly refused by the court.
The evidence of both parties tended to show that Jesse V. Allen entered into a verbal contract with the defendant, through J. S. Silverstein, its president and general manager, to lay the brick in the walls of the dry-kiln at either $3.25 or $2.75 per thousand, the evidence as to the *Page 510 
amount being conflicting. Allen was to look after the employment of hands to work on the job, the wages paid them to be deducted from the contract price for laying the brick. The defendant was to furnish all of the material for the construction of the walls. It was also shown by the evidence of both parties that the defendant turned over to Allen a blue-print containing plans and specifications for the construction of the walls of the kiln. These plans and specifications provided, among other things, for a concrete foundation for the walls of said kiln, the same to be 24 inches wide and 18 inches high, but did not provide for pilasters to be put on the walls.
Plaintiffs' witness J. V. Allen testified that the base was to be of concrete, under the ground, but was built of brick under the orders of Silverstein. He told Silverstein that he noticed on the blue-print that it was to be a concrete base, and that it ought to go in under the building, and he, Silverstein, said, "Put in brick." He also testified that (460) Silverstein ordered him to put up some pilasters on the sides of the walls. That Silverstein, or defendant's superintendent, were around looking after the work a number of times. Mr. Bowman, who was employed by the defendant and had charge of its office, was around two or three times every day. That in paying the hands they signed Mr. Silverstein's payroll, and the witness gave some orders. That the blueprint showed the bricks were to be laid on a cement foundation, but Mr. Silverstein changed the foundation and decided to put in a brick foundation instead, and ordered Allen to do so. That Silverstein was present a number of times and gave orders in regard to the construction of the walls.
Herbert Allen, a witness for plaintiffs, testified: When they went there to work, Mr. Silverstein stated to them to go ahead and put in a brick foundation instead of concrete. Witness's brother told Mr. Silverstein that the concrete base ought to go in. Mr. Silverstein said the brick would do, and Jesse said, "You are the doctor; we will put it in that way if you say so." That while he was at work in this building, he saw Mr. Bowman there every day, once or twice a day. Mr. Bowman was giving orders about one thing and another. He laid out some work there; placed off the rods that were elevated for the track to go through the dry-kiln; that he followed his directions. He saw Mr. Silverstein there several times during the progress of the work. He came to see how it was getting along and gave orders; that he got his pay by signing Mr. Silverstein's pay-roll, and was paid off in checks of the Gloucester Lumber Company; that the other laborers got their pay in the same manner."
Sibley Allen, a witness for the plaintiffs, testified: "I heard a conversation between Mr. Silverstein and Mr. Bowman and my brother; he *Page 511 
would come around and discuss what to do and tell him to go ahead and put it in like he said."
As the intestates were killed by the falling of the walls of the kiln which was then being constructed for the defendant, it would be liable in damages to the plaintiffs, provided there was negligence which proximately caused the wall to fall. If there is anything, then, that relieves the defendant of this liability, it is, under the ordinary rule of law, incumbent upon it to so allege and prove, as this is entirely defensive matter. It follows that, as to the defense that the work was being done by an independent contractor, the burden was upon the defendant to show that fact. 26 Cyc., pp. 1573-4; Midgett v. Mfg. Co., 150 N.C. 333; Sutton v.Lyon, 156 N.C. 3; Mitchell v. Whitlock, 121 N.C. 166; Cook v. Guirkin,119 N.C. 13.
This Court has held that in the trial of causes in which the defendant seeks to avoid liability upon the ground that the party in charge of the work is an independent contractor, it is proper "to submit the question raised by the contention of the defendant in this respect (461) to the jury in a separate issue or question. Young v. Lumber Co.,147 N.C. 35. As this issue is raised by the defendant in its answers, the burden is upon it to sustain its allegation by the greater weight of the evidence. It is elementary that the burden of proof rests upon the party having the affirmative of the issue, and if a defendant, in cases of this kind, alleges an independent contract, the facts pertaining thereto being peculiarly within his knowledge, the law and justice require that he establish the alleged contract to the satisfaction of the jury by the greater weight of the evidence. It would be unfair, and work a hardship, if the burden should be put upon the plaintiff of disproving an alleged contract to which he is an entire stranger.
It is well settled that when the court is asked to give a peremptory instruction to the jury, requiring them to find for one of the parties, the other is entitled to have the evidence considered in the light most favorable to him (Hodges v. R. R., 122 N.C. 992; Board of Education v.Makeley, 139 N.C. 31), which principle has been approved in many subsequent cases. Denny v. Burlington, 155 N.C. 33 (an independent contractor case).
Whether Jesse V. Allen was an independent contractor, for whose negligence the defendant was not responsible to the plaintiffs, presented an issue of fact which was properly left to the jury for decision, as the court could not, in the state of the evidence, pass upon this question as one of law. There was conflicting evidence which clearly made a case for the jury. If the terms of the contract had been admitted or otherwise established, their meaning would become a question of law; but as *Page 512 
this contract was in parol and its terms were not settled, and there was conflicting evidence as to what was said and done, it was naturally and legally the function of the jury to draw the necessary deductions therefrom, under proper instructions from the court as to what would constitute Jesse V. Allen an independent contractor, for whose acts of negligence defendant would not be responsible, with reference, of course, to the peculiar circumstances. An independent contractor is said to be one who, exercising an independent employment, contracts to do a piece of work according to his own judgment and methods, and without being subject to his employer, except as to the result of the work, and who has the right to employ and direct the action of the workmen, independently of such employer and freed from any superior authority in him to say how the specified work shall be done or what the laborers shall do as it progresses. 1 Bouvier's Law Dict., p. 1011; Casement v. Brown,148 U.S. 615 (37 L.Ed., 582). The rule, however, is subject to this qualification: "Where an obstruction or defect which occasions an injury results directly from the acts which an independent contractor (462) agreed and was authorized to do, the person who employs the contractor and authorizes him to do these acts is liable to the injured party; but where the obstruction or defect caused or created is purely collateral to the work contracted to be done, and is entirely the result of the wrongful acts of the contractor or his workmen, the rule is that the employer is not liable, and in such case the contractor will be liable for his own negligent acts." We thus defined the relation in Craftv. Lumber Co., 132 N.C. at p. 158. "Where the contract is for something that may lawfully be done, and is proper in its terms, and there has been no negligence in selecting a suitable person to contract with in respect to it, and no general control is reserved either in respect to the manner of doing the work or the agents to be employed in doing it, and the person for whom the work is to be done is interested only in the ultimate result of the work and not in the several steps as it progresses, the latter is not liable to third persons for the negligence of the contractor as his master. Cooley on Torts (2 Ed.), sec. 548, p. 646. The principle as thus stated, and which we believe to be the correct one, has been approved and applied by this Court in Waters v. Lumber Co.,115 N.C. 652." But that was said with strict reference to the particular facts of the case then being decided, and we had no occasion to state the rule where the work to be done is intrinsically or inherently dangerous. An employer, of course, cannot authorize a dangerous piece of work to be done, or work the doing of which according to the contract of employment will necessarily or probably be dangerous and injurious to others, for this would be to participate in the commission of the tort, or to *Page 513 
authorize the doing of it. The employer is, therefore, liable if injury results from work as he has authorized it to be done. Robbins v. Chicago, 4 Wall. (U.S.), 657, 679 (18 L.Ed., 527); Water Co. v. Ware, 16 Wall., 566, 576 (21 L.Ed., 485); Ph. etc., R. Co. v. Ph., etc., Steam TowboatCo., 23 How. (U.S.), 209 (16 L.Ed., 433); Chicago v. Robbins, 2 Black (U.S.), 418 (17 L.Ed., 298). In Davis v. Summerfield, 133 N.C. 325, this principle was applied, citing and quoting from R. R. v. Moore,88 Md. 352: "Even if the relation of principal and agent or master and servant does not, strictly speaking, exist, yet the person for whom the work is done may still be liable if the injury is such as might have been anticipated by him as a probable consequence of the work let out to the contractor, or if it be of such character as must result in creating a nuisance, or if he owes a duty to third persons or the public in the execution of the work." When one contracts to do and delivers certain specific work, which is not unlawful, and the manner of doing of which, including the employment, payment, and control of the labor, is left entirely to him, he is an independent contractor, for whose acts and omissions in the execution of such contract the other contracting party is not liable, since the doctrine of respondeat superior has no application where the employee represents the employer only as (463) to the lawful purpose of the contract, but does not represent him in the means by which that purpose is to be accomplished. The accepted doctrine is that in cases where the essential object of an agreement is the performance of work, the relation of master and servant will not be predicated, as between the party for whose benefit the work is to be done, and the party who is to do the work, unless the former has retained the right to exercise control over the latter in respect to the manner in which the work is to be executed. The proprietor may make himself liable by retaining the right to direct and control the time and manner of executing the work or by interfering with the contractor and assuming control of the work, or of some part of it, so that the relation of master and servant arises, or so that an injury ensues which is traceable to his interference. But merely taking steps to see that the contractor carries out his agreement, as having the work supervised by an architect or superintendent, does not make the employer liable, nor does reserving the right to dismiss incompetent workmen. The following authorities sustain these propositions: Denny v. Burlington, 155 N.C. 33; Robineuxv. Herbert, 118 La. 1089 (12 L.R.A. (N.S.), 632); Richmond v.Sitterding, 101 Va. 354 (65 L.R.A., 447, and notes); 1 Lawson Rights, Remedies, and Practice, sec. 299. The last cited authority states, in an excellent note upon this subject, that if the owner of a building deals with the contractors, with reference to the manner of doing the work, in *Page 514 
such a way "that in doing any particular act they are obeying the directions of the owner, if that act is negligent and damage ensues, he is liable. In such a case it is his duty to see that what is done under his special orders is not negligently done," citing Hefferman v. Benkard, 1 Robt., 436. The act of the defendant in interfering with the work and causing the substitution of brick for cement, which had been specified as the proper material, brings it under the condemnation of the law just stated. If we read the verdict in connection with the evidence, and the charge, which was free from error, we see that the jury have found that defendant was guilty of this interference, and to this extent, at least, he took personal charge of the work and thereby weakened the foundation of the wall, so that it fell and killed the intestate. This conduct on his part made him the master and Jesse V. Allen his servant, and for the acts of the latter in this respect he has become responsible. But the case is still stronger against it, for by thus reserving, and actually assuming, control and causing to be done this negligent act, the injury is directly traceable to it, and the law refers the injury to the wrongful act or tort of the defendant as the direct, efficient, and proximate cause thereof. Its responsibility is so clear that if there was any error in regard (464) to the application of the principle res ispa loquitur, it would be harmless and unprejudicial, as it could not have affected the result.
There are several other exceptions, but they all converge to this one point, Was Jesse V. Allen an independent contractor? If not, the jury were manifestly right, upon the evidence, when they found that defendant is liable for the falling of the wall. This really covers the entire case, and it would be idle to give the other exceptions a separate study and discussion.
The charge as to damages was correct. Mendenhall v. R. R., 123 N.C. 275;Carter v. R. R., 139 N.C. 499; Poe v. R. R., 141 N.C. 525;Gerringer v. R. R., 146 N.C. 32; Fry v. R. R., 159 N.C. 357, 362;Johnson v. R. R., 163 N.C. 431, 451.
After a careful review of the whole case, no error has been discovered.
No error.
Cited: Scales v. Lewellyn, 172 N.C. 498 (4d); Gadsden v. Craft,173 N.C. 420 (3c); Simmons v. Lumber Co., 174 N.C. 227 (3c, 4c);In re Will of Deyton, 177 N.C. 503 (3p); Aderholt v. Condon,189 N.C. 756, 757 (3c); Greer v. Construction Co., 190 N.C. 635
(3c); Lumber Co. v. Motor Co., 192 N.C. 381 (2c, 3c); Lilley v.Cooperage Co., 194 N.C. 252 (3c); Teague v. R. R., 212 N.C. 34 (2c, 3c); Wiley v. Olmsted, 212 N.C. 99 (3p); Bass v. Wholesale Corp.,212 N.C. 253 (2c); Lassiter v. Cline, 222 N.C. 274 (3c);Hayes v. Elon College, 224 N.C. 15, 19 (3c). *Page 515