**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

─────────────

**No. 05-1089**

─────────────

TIMOTHY VERNON COMMEE,

                                      Plaintiff - Appellant,

      versus

NUCOR CORPORATION,

                                        Defendant - Appellee.

─────────────

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh. Terrence W. Boyle, District Judge. (CA-03-26-2-BO)

─────────────

Submitted: November 21, 2005        Decided: March 8, 2006

─────────────

Before WILKINS, Chief Judge, GREGORY, Circuit Judge, and Walter D. KELLEY, Jr., United States District Judge for the Eastern District of Virginia, sitting by designation.

─────────────

Affirmed by unpublished per curiam opinion.

─────────────

Raymond E. Dunn, Jr., EMANUEL & DUNN, P.L.L.C., New Bern, North Carolina; J. Jefferson Newton, NEWTON LAW FIRM, Beaufort, North Carolina, for Appellant. Joseph C. Moore, III, Arch T. Allen, III, ALLEN & MOORE, L.L.P., Raleigh, North Carolina, for Appellee.

─────────────

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

PER CURIAM:

Timothy Vernon Commee appeals the district court's grant of summary judgment to Nucor Corporation ("Nucor") on Commee's negligence claims under North Carolina law. Commee was seriously injured while employed by Lexicon, Inc. d/b/a Schueck Steel Company ("Schueck") in constructing a steel plant for Nucor. Because no genuine issues of material fact exist and Nucor is entitled to judgment as a matter of law, we affirm.

I.

Nucor, the largest producer of steel in the United States, engaged Schueck and other independent contractors to construct a steel mill on its land in Hertford County, North Carolina. Specifically, in September and November of 1999, Nucor contracted with Schueck for steel erection work in its roll mill bay. J.A. 29-71. Under the terms of the contracts, Schueck was to erect and maintain "all safeguards for safety and protection of persons and property" relating to its work. Id. at 32-33, 55-56. However, Nucor retained some oversight of Schueck's safety procedures during the course of its construction activities. See, e.g., id. at 33, 56, 288-89. In addition, Nucor hired Gerald Beaumont to inspect the job site every four to six weeks. During his visits, Beaumont would report any hazards discovered to the relevant contractor's supervisor, and the problems would be corrected. Id. at 294-95.

2

Nucor also maintained a presence at the construction site and reserved the right to inspect and test Schueck's work. Id. at 309. Nucor was responsible for sequencing the work of the various independent contractors active at the facility so that they would not overcrowd any one area of the job site. Id. at 308-09. Finally, Nucor's contracts with Schueck required that Nucor be named as an additional insured under Schueck's comprehensive liability insurance. Id. at 31-32, 54.

Schueck employed Commee, the plaintiff, as an ironworker for its steel erection work at the Nucor Hertford mill. On May 12, 2000, Commee and other Schueck employees were installing a twenty-six-foot steel beam at a height of sixteen feet in the roll mill bay. One Schueck employee used a forklift to lift the beam into the place where Commee was to weld it in. The beam struck an unsecured overhead pipe rack (also installed by Schueck), which caused the pipe rack to fall on Commee, sending him sixteen feet to the ground. Commee sustained serious injuries as a result. According to Commee's expert, a forklift should not have been used to lift a beam because it could not appropriately balance the load. Id. at 371.

On May 7, 2003, Commee filed a complaint in the Eastern District of North Carolina on the basis of diversity jurisdiction. He sought to hold Nucor liable for his injuries under three different theories of negligence under North Carolina law: (1)

landowner liability; (2) retained control; and (3) non-delegable duty based upon an inherently dangerous activity. After discovery, Nucor moved for summary judgment. On December 13, 2004, the district court granted Nucor's motion because Commee could not support the imposition of liability against Nucor under any of his asserted theories.

II.

We review a district court's grant of summary judgment de novo. Castillo v. Emergency Med. Assocs., P.A., 372 F.3d 643, 646 (4th Cir. 2004). Summary judgment is appropriate if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Id. In reviewing the evidence, we draw all reasonable inferences in favor of Commee, the nonmoving party. Id.

III.

A federal court sitting in diversity applies the substantive law of the state in which it sits, including the state's choice-of-law rules. Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co., 386 F.3d 581, 599-600 (4th Cir. 2004) (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64, 79 (1938) and Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941)). Based upon these

4

principles, the substantive law of North Carolina applies. <u>See</u> <u>Boudreau v. Baughman</u>, 368 S.E.2d 849, 853-54 (N.C. 1988).

Under North Carolina law, "one who employs an independent contractor is not liable for the independent contractor's negligence" unless, as relevant here, either "the employer retains the right to control the manner in which the contractor performs his work" or the work involves an "inherently dangerous activity." <u>Woodson v. Rowland</u>, 407 S.E.2d 222, 234 (N.C. 1991). This general rule applies with equal force regardless of whether we treat Nucor as a landowner or a general contractor.[1] <u>See</u> <u>id.</u> Here, however, Commee has attempted to assert liability based upon Nucor's status as a landowner in a separate claim from his assertion of liability under the exceptions to the general rule. This, he cannot do. <u>See</u> <u>Vogh v. F.C. Geer Co.</u>, 88 S.E. 874, 876 (N.C. 1916) (holding that as long as the work is not inherently dangerous, a landowner is "permitted to free himself from liability by contract with another for its execution"). <u>See also</u> <u>Brown v. Texas Co.</u>, 76 S.E.2d 45, 47 (N.C. 1953) (landowner not liable for injuries to employees of an independent contractor where the work was not inherently dangerous); <u>Cook v. Morrison</u>, 413 S.E.2d 922, 926 (N.C. Ct. App. 1992) (noting that the "general rules on the tort liability of

---

[1]To the extent that there is a dispute between the parties as to whether Nucor was acting as a general contractor, we do not reach this issue because we do not find it dispositive of Commee's claims. Therefore, we will assume, without deciding, that Nucor was acting as a general contractor.

owners and occupiers . . . do not apply to the actual work undertaken by independent contractors and their employees").

Accordingly, Commee can only survive summary judgment, regardless of whether Nucor was acting as a general contractor or a landowner, if there is a genuine issue of material fact as to whether one of the two asserted exceptions to the general rule against liability applies.  We therefore examine (1) whether Nucor retained control of Schueck's performance and, alternatively, (2) whether the steel erection work here was inherently dangerous.

A.

Commee first argues that Nucor retained sufficient control of Schueck's work to hold Nucor liable.  Under North Carolina law, one who employs an independent contractor may be held liable if the employer "retains the right to control the manner in which the contractor performs his work."  Woodson, 407 S.E.2d at 234. Specifically,

> The proprietor may make himself liable by retaining the right to direct and control the time and manner of executing the work or by interfering with the contractor and assuming control of the work, or of some part of it[.] . . . But merely taking steps to see that the contractor carries out the agreement, as having the work supervised by an architect or superintendent, does not make the employer liable, nor does reserving the right to dismiss incompetent workmen.

Denny v. City of Burlington, 70 S.E. 1085, 1087 (N.C. 1911) (internal quotation marks omitted).  See also Hooper v. Pizzagalli

6

Constr. Co., 436 S.E.2d 145, 149 (N.C. Ct. App. 1993) (applying this language); O'Carroll v. Roberts Indus. Contractors, Inc., 457 S.E.2d 752, 756 (N.C. Ct. App. 1995) (same).

Applying these principles, the North Carolina appellate courts have found that where an independent contractor is "free to perform its job according to its own independent skill, knowledge, training, and experience," liability under a retained control theory will not attach to the general contractor or landowner. Hooper, 436 S.E.2d at 149. In addition, in the specific context of retained control over safety measures, requiring that an independent contractor take its own safety precautions or even mandating compliance with the safety measures or requirements initiated by the owner or general contractor does not amount to control of the "method and manner" of performance. Maraman v. Cooper Steel Fabricators, 555 S.E.2d 309, 323-24 (N.C. Ct. App. 2001), aff'd in part, rev'd in part, 562 S.E.2d 420 (N.C. 2002) (per curiam).[2]

Here, none of Nucor's retained rights allowed it to control the "method and manner" of Schueck's performance of the steel erection work. See id. Although Nucor maintained a supervisory

---

[2]In the Maraman case, the Supreme Court of North Carolina affirmed the portion of the court of appeals's opinion that found that neither the retained control nor inherently dangerous activity exceptions applied to the general contractor defendant. 562 S.E.2d at 421. It also clarified that this part of the lower court's opinion had been mislabeled as a dissent. Id.

7

presence on the site and retained the right to inspect Schueck's work, materials, and equipment, this does not amount to retained control. See id. at 324; Denny, 70 S.E. at 1087. Likewise, under Maraman, Nucor's retained oversight over safety measures--such as approving Schueck's safety program, pointing out safety hazards, and requiring that Schueck's materials and practices live up to safety regulations--does not support liability under the retained control exception. See 555 S.E.2d at 324.

Nor does Commee's remaining evidence support his contention that Nucor retained control of Schueck's performance. The fact that Nucor contracted to be named as an insured on Schueck's comprehensive general liability insurance does not demonstrate a retained right of control. Moreover, although Nucor was responsible for sequencing the independent contractors' work, we cannot conclude that this general supervision constitutes control over the method and manner of performance as meant by North Carolina case law. Commee can point to no evidence that Nucor instructed Schueck how to perform its steel erection work at the site, "interfer[ed] with the contractor and assum[ed] control of the work, or of some part of it," see Denny, 70 S.E. at 1087, or that Schueck was otherwise not "free to perform its job according to its own independent skill, knowledge, training, and experience,"

8

see Hooper, 436 S.E.2d at 149. Indeed, the evidence shows that Nucor employees were not even present when the accident occurred.[3]

For the foregoing reasons, the district court correctly determined that Nucor did not retain sufficient control of Schueck's performance to be held liable to Commee.[4]

---

[3]Although not controlling, we also note that the Eighth Circuit recently evaluated Nucor's control over Schueck under similar facts in a case arising in Nebraska. See Jordan v. Nucor Corp., 295 F.3d 828, 836 (8th Cir. 2002). The court determined under Nebraska law, that Nucor did not retain sufficient control over Schueck's performance to impose liability. Id.

[4]Commee's brief also contains a discussion of the multi-employer doctrine. The multi-employer doctrine provides that "an employer who controls or creates a worksite safety hazard may be liable under the Occupational Safety and Health Act [OSHA] even if the employees threatened by the hazard are solely employees of another employer." Universal Constr. Co. v. Occupational Safety and Health Review Comm'n, 182 F.3d 726, 728 (10th Cir. 1999). North Carolina has accepted the multi-employer doctrine as a basis for upholding OSHA citations of general contractors. See Comm'r of Labor v. Weekley Homes, L.P., 609 S.E.2d 407 (N.C. Ct. App. 2005).

Commee does not argue this as a separate theory of liability. See Br. of Appellant 11; Reply Br. of Appellant 6. Rather, as relevant here, Commee appears to argue that the multi-employer doctrine is evidence that Nucor retained control of Schueck's performance based upon contractual language that "[t]he parties acknowledge that safety on the job site is of paramount importance to Nucor" and "[a]ll Work, materials, and practices shall meet OSHA requirements." See Br. of Appellant 21-24 (quoting J.A. 32-33, 55). However, we do not believe that this demonstrates retained control by Nucor. Rather, in the context of the full provision, the language is directed toward Schueck's responsibilities for safety, not Nucor's. See J.A. 32-33, 55.

9

Commee next argues that Nucor had a non-delegable duty to ensure his safety because the steel erection work here was inherently dangerous. "One who employs an independent contractor to perform an inherently dangerous activity may not delegate to the independent contractor the duty to provide for the safety of others." Woodson, 407 S.E.2d at 235. To impose liability under this theory, Commee must show that: (1) the activity causing the injury was inherently dangerous; (2) Nucor knew or should have known that the activity was inherently dangerous; (3) Nucor failed to take the necessary precautions to control the attendant risks; and (4) that Nucor's failure to take precautions proximately caused Commee's injury. Kinsey v. Spann, 533 S.E.2d 487, 492 (N.C. Ct. App. 2000). Commee's argument fails because he cannot show the inherent danger of the steel erection work under the first prong of the analysis.

In North Carolina, whether an activity is inherently dangerous may be decided as a matter of law. Woodson, 407 S.E.2d at 235-38. In making the determination of what is inherently dangerous, North Carolina distinguishes between "inherently dangerous activities, and those that are safe unless performed negligently." Id. at 235. To qualify under this exception, "[i]t is sufficient if there is a recognizable and substantial danger inherent in the work, as distinguished from a danger collaterally created by the independent

10

negligence of the contractor, which latter might take place on a job itself involving no inherent danger." Evans v. Elliott, 17 S.E.2d 125, 128 (N.C. 1941).

Whether an activity is inherently dangerous can vary based upon the circumstances in which the work is performed. For example, digging a trench in a heavily populated area is inherently dangerous as a matter of law, whereas trenching in a pasture might not be. See Woodson, 407 S.E.2d at 236 (citing Evans, 17 S.E.2d at 130). With respect to the trench-digging scenario, which is a recurrent subject in the North Carolina cases,

> the focus is not on some abstract activity called "trenching." The focus is on the particular trench being dug and the pertinent circumstances surrounding the digging. It must be shown that because of these circumstances, the digging of the trench itself presents "a recognizable and substantial danger inherent in the work, as distinguished from a danger collaterally created by the independent negligence of the contractor."

Id. at 237 (quoting Evans, 17 S.E.2d at 128). Thus, a consideration of the attendant circumstances of the work is relevant to the inquiry.

North Carolina courts have previously considered the inherent danger of steel erection. In Vogh, the Supreme Court of North Carolina faced a scenario in which the independent contractor's employee was engaged in steel and iron work on the fourth floor of a building under construction. 88 S.E. at 875. The employee was injured when a faulty wooden plank that had been laid across the girders for workers to stand on broke. Id. The court held that

11

the erection of a building was not inherently dangerous.  Id. at 876.

Recently, the North Carolina courts addressed the inherent danger of steel construction in a situation even more akin to the present one.  See Maraman, 555 S.E.2d at 324-25.  In Maraman, the independent contractor's employee was standing on a girder without a safety line at a height of thirty-one feet.  Id. at 312. As he attempted to position an eighty-five foot steel joist being lifted by a crane, the joist struck him in the head, knocking him to the ground.  Id.  The Court of Appeals of North Carolina held that this steel construction work was not inherently dangerous as a matter of law.  Id. at 324-25 (finding the facts indistinguishable from Vogh).  In the analogous situation presented here, the steel erection at the Nucor Hertford plant involved a shorter steel beam (twenty-six feet) and a shorter height of installation (sixteen feet).  Thus, we are unable to distinguish the particular circumstances of the present steel erection from the steel erection work in Maraman in favor of Commee.

Commee attempts to counter this precedent on several fronts. First, he points to his expert opinion that the use of the forklift made the work dangerous because it was not the appropriate equipment for the job.  See J.A. 371.  However, any danger created by the use of the forklift was the result of negligence collateral to the work performed, which, as discussed, does not reflect on the

12

inherent danger of the activity.  Compare Hooper, 436 S.E.2d at 149 (use of a thirteen-foot scaffold with no guardrails and without being secured was collateral to the plumbing work being performed, which was not inherently dangerous) with Lilley v. Blue Ridge Elec. Membership Corp., 515 S.E.2d 483, 485, 487 (N.C. Ct. App. 1999) (genuine issue of material fact as to whether setting one-ton utility poles in "treacherous" mountain terrain was inherently dangerous).

Next, Commee references the high mortality rate in the construction industry, and offers an expert opinion that "steel erection and construction activities associated with steel erection are inherently dangerous activities" and that "there were recognized and substantial dangers inherent in and peculiar to the steel erection project at the Nucor plant in Hertford." J.A. 370. However, the expert's general characterization of steel erection work as inherently dangerous cannot overcome the law of North Carolina.  Nor does the expert's assessment that the particular circumstances here rendered the work inherently dangerous support Commee's claim; his expert's stated reasons for this conclusion--such as the improper use of the forklift--fail to distinguish the present facts from the North Carolina precedent.  See id. at 370-71.  As a result, we conclude that Commee has failed to show that a genuine issue of material fact exists with respect to the inherent danger of the steel erection at issue here.  We therefore

13

affirm the district court's conclusion that the inherently dangerous activity exception does not apply.[5]

IV.

Because the district court correctly concluded that Commee's evidence does not support recovery for him under any of his asserted theories of relief, we affirm its grant of summary judgment to Nucor.

AFFIRMED

---

[5]Because we affirm the district court's decision to grant summary judgment on these bases, we do not reach Nucor's alternative grounds that Commee's exclusive remedy is under the North Carolina Workers' Compensation Act or that the judgment can be affirmed due to collateral or contributory negligence.