No. 3676

Second Circuit

GOETSCHEL v. GLASSELL-WILSON CO., INC., ET AL.

(March 24, 1930. Opinion and Decree.)
(June 2, 1930. Rehearing Refused.)

Foster, Hall, Barret & Smith, of Shreveport, attorneys for plaintiff, appellee.

Thatcher, Browne, Porteous & Myers; Alex F. Smith and J. S. Atkinson, of Shreveport, attorneys for defendants, appellants.

DREW, J.  Plaintiff sued the Glassell-Wilson Company, Inc., the Lukens Steel Company, the Lukens Erection Company, the Lukens Erecting Company, Inc., and A. B. Cowan, Jr., for damages for personal injuries claimed to have been sustained by her through the gross negligence and carelessness of said defendants or one of their employees.

Before the case was presented on the merits, all of said defendants were eliminated from it except the Glassell-Wilson Company, Inc., the Lukens Steel Company, and the Lukens Erecting Company, Inc.

Plaintiff's petition averred that the workmen engaged in the structural steel work of the present Caddo parish courthouse, while engaged in knocking out rivets drove a rivet with sufficient force to cause it to bound across the street and strike plaintiff, causing her serious injuries.

Many exceptions were filed and tried. These exceptions are not urged here, and have no bearing on the case as now presented on appeal.

The Glassell-Wilson Company, Inc., answered, denying that plaintiff was injured through the acts of any of its employees, and averred that it had taken the contract from the police jury of the parish of Caddo for the erection of the courthouse, but had sublet the erection of the structural steel work in same to the Lukens Erecting Company, Inc.

The Lukens Steel Company answered, alleging that its business was that of manufacturing iron and steel, etc.; that it had no contract of employment or otherwise in connection with the said courthouse; that it had no employees of any kind at any time engaged in said work; and that the Lukens Erecting Company, Inc., had the subcontract with the said Glassell-Wilson Company, Inc.

The Lukens Erecting Company, Inc., denies the allegations of plaintiff's petition as to her injuries and as to the negligence of any of its employees; and alleges that it had entered into a contract with Glassell-Wilson Company, Inc., for the erection of the structural steel work in said building, and that it had, in turn, entered into a subcontract with Martin Rasmussen, a resident of New Orleans, La., who carried on business under the name of Rasmussen Construction Company, under which contract the said Martin Rasmussen and Rasmussen Construction Company agreed to furnish all labor and erect the steel frame work of said courthouse, and that said Rasmussen entered upon said work and completed said contract, and employed and paid his own labor; that it had exercised no control whatever over said Rasmussen or Rasmussen Construction Company or its employees; that he employed all workmen who erected said steel work, and paid and discharged them, and was in sole charge of said work, and had sole control of the workmen engaged in the work; and that it was notorious and well known that Rasmussen was erecting said structural steel, and that it is informed and believes that this fact was well known to plaintiff.

A. B. Cowan, Jr., did not answer, for the reason that an exception of no cause of action in his behalf had been sustained.

The Lukens Erecting Company, Inc., showed that there was no such company as the Lukens Erection Company, and therefore there was no answer filed by Lukens Erection Company.

The case was tried before a jury, and at the inception of the trial plaintiff's attorneys made the statement to the jury and the court, in order to clear up the pleadings, that the only defendants then before the court were the Glassell-Wilson Company, Inc., the Lukens Steel Company, and the Lukens Erecting Company, Inc.

The judgment of the lower court, approving the verdict of the jury, was in favor of the plaintiff and against the defendant Lukens Erecting Company, Inc., in the sum of $2,708, with legal interest from June 12, 1929 (date of verdict) and all costs of suit. As to the other defendants, Glassell-Wilson Company, Inc., and Lukens Steel Company, the judgment was in their favor, and rejected the demands of the plaintiff.

The Lukens Erecting Company, Inc., has appealed from this judgment, and the plaintiff has answered the appeal, and prays that the amount of the judgment be increased to the amount sued for, and that interest on the judgment be allowed from judicial demand as provided in Act No. 206 of 1916. Plaintiff did not appeal from the judgment rejecting her demands as to the other defendants. Therefore the only

defendant before this court is the Lukens Erecting Company, Inc.

The first question for this court to determine is whether or not Martin Rasmussen was an independent contractor or a servant of the defendant.

The policy of the original contractor, the Glassell-Wilson Company, Inc., was to use all union labor, and it seems that at the time of the subletting of the steel work to the defendant an agreement was reached whereby union labor was to be used. The policy of the subcontractor, defendant herein, was one of "open shop," and, in order to meet the requirement of the Glassell-Wilson Company, Inc., or at the request of that company, the defendant executed the following contract or agreement with Martin Rasmussen.

"This agreement, entered into by the Lukens Erecting Company, a corporation of Louisiana, party of the first part, and Martin Rasmussen, proprietor of and doing business as Rasmussen Construction Company, party of the second part, witnesseth:

"I. The first party has heretofore agreed to erect the steel frame work of the new Caddo Parish Court House presently being constructed at Shreveport, Louisiana, but desires to sublet said construction work to the second party.

"II. The first party will furnish all the equipment necessary for such construction work to the second party who hereby agrees to return same upon completion of the work in as good condition as received, reasonable wear and tear excepted.

"III. The second party agrees to furnish all labor, supervision and material necessary for the completion of such work and in accordance with plans and specifications therefor.

"IV. The first party shall pay to the second party the amount expended by it for payrolls and all other expenses in connection with such work, and in addition the sum of $85 per week, beginning and ending with the completion of the work.

"In witness whereof, the first party has caused this agreement to be signed in New Orleans by its duly authorized representative, this 9th day of December, 1926, and the second party has signed this agreement at New Orleans this 9th day of December, 1926.

"Lukens Erecting Company,
"R. W. Ferguson, President.
"Rasmussen Construction Company,
"Martin Rasmussen."

In the case of Dick vs. Gravel Logging Co., Inc., 152 La. 993, 95 So. 99, the Supreme Court said:

"To ascertain the nature and character of a workman's undertaking, to determine whether he was a servant or an independent contractor, all the elements entering into the employment must be considered."

And in 14 R. C. L. p. 78, the correct rule is set out:

"The parties cannot, however, avoid an investigation into their actual relation by the execution of a contract not representing the true situation as to the control reserved by the employer over the work."

The Lukens Steel Company was engaged in manufacturing iron and steel and not in erecting steel. The Lukens Erecting Company, Inc., was engaged in erecting and not in manufacturing. Both companies occupied the same offices in the city of New Orleans, and both had, to a great extent, the same officers. The president of one was the general manager and president of the other, and the stockholders in the Lukens Steel Company owned a great majority of the stock in the Lukens Erecting Company, Inc. When the defendant herein would get a contract to furnish and erect the steel in a building, the Lukens Steel Company would furnish the steel. The Lukens Steel Company furnished the steel in the courthouse building in Shreveport, but for whose account the record does not disclose.

Defendant filed in evidence a number of bills for material made out to Rasmussen Construction Company, but, after a careful examination of all of them, we fail to find that there is any bill for the steel used in the building. Undoubtedly the steel used must have been the largest item of material used.

The agreement relied on by defendant states that Rasmussen was to furnish all material on the job. The bills filed cover only small things such as rivets, handles for sledge hammers, handles for hammers, repair work on tools, etc., gasoline, lumber necessary to be used as scaffolding, small amounts of pipe, valves, bushings, etc.; just such things as were necessary to be supplied to keep the work going on, and not material that went into the building. It was incumbent on defendant to show that Rasmussen and not it furnished the material as set out in the agreement, and in that it has failed.

Defendant agreed to furnish all equipment necessary for the construction, which included tools and appliances, and it did furnish all such equipment.

The agreement calls for Rasmussen to receive the sum of $85 per week, payable weekly, and the evidence shows that on Thursday of each week Rasmussen would call the defendant on the telephone and relate the amount of money expended for material, such as is set out by the bills above referred to, and the amount of the payroll for the week, including the $85 coming to himself, and the salary of the bookkeeper, and that defendant would immediately send him a check for the amount; that Rasmussen would deposit the check and draw out the money and pay off the labor in cash on Saturday at noon; and that he would also pay all bills of whatsoever kind that had been made by him on the job during that week. Rasmussen received nothing more than his regular weekly salary of $85. He made no commission on the other workmen or on the little material he purchased to keep the job going.

In determining the independence of a contractor, whether he or the master furnishes the appliances and tools is a matter worthy of consideration, since, as a general rule, an independent contractor furnishes the means for doing the work.

The mode of payment for the work to be done is an important element to be considered in determining whether the employee is an independent contractor. But neither is controlling by itself. 14 R. C. L. pp. 73, 74; 20 A. L. R. p. 772.

In 20 R. C. L. pp. 792, 793, there are a number of facts cited tending to prove that the person employed was a servant and not an independent contractor. Among those facts are the following:

"That the person employed received a guarantee that his remuneration, as fixed upon a quantitative basis, should not fall below a specified sum."

"That the risk of all fluctuations in the scale of wages was taken by the principal employer, and not by the immediate employer of the men hired to perform the stipulated work."

"That the relationship of master and servant had existed between the employer and the person employed before the latter undertook the work in question."

"That the person employed did not receive any profit on the work, or on the daily wages of the workmen hired by him."

All four of the above facts are pertinent to this case.

Rasmussen received a guaranty of $85 per week, and the risk of fluctuation in the scale of wages was taken by the defendant. In paragraph 4 of the agreement,

defendant agreed to pay to Rasmussen each week the amount expended for payrolls, without any specific amount being stated. Rasmussen did not receive any profit on the work or on the daily wages of the workmen hired by him; and for six or eight months prior to the signing of the agreement Rasmussen was in the employ of defendant as foreman, and, immediately upon finishing the job designated in the agreement, he continued in the employ of defendant as construction foreman, and, according to the testimony of an officer of defendant, he was so necessary to the company in its construction work that it could not spare his time for him to come to the trial of this case and give his testimony. He did not testify in court or by deposition.

We might add to the above facts the fact that defendant furnished all tools and appliances, and the mode of payment as heretofore set out.

In Shea vs. Reems, 36 La. Ann. 966, the court said:

"Where a person with his horse and wagon is employed by another to perform services for the latter at a fixed wage of so much per week and certain additional commissions, the payment of wages establishes the relation of master and servant, implies subjection of the latter to the control and direction of the former, and gives rise to the responsibility of the master for the servant's negligent injuries in the course of his employment." Holmes vs. Tennessee C., I. & R. Co., 49 La. Ann. 1471, 22 So. 403; Dick vs. Gravel Logging Co., supra.

In the subcontract between Glassell-Wilson Company, Inc., and the defendant herein, there is a clause inserted wherein the defendant bound itself to begin to deliver the work of erecting the steel within four weeks and to complete the job in eight weeks. In the agreement between the defendant and Rasmussen there is no time specified, and it is inconceivable to think that defendant would have sublet the work without binding its subcontractor to complete the work within the same time.

There is no time specified for beginning or completing the work in the agreement between Rasmussen and defendant. The indemnity bond for protection of the workmen was paid for by the defendant. There is no proof that, when the work was complete, the defendant accepted same from Rasmussen, or that it was necessary. It is shown that all money expended each week was furnished by the defendant, and that no amount was held back until the completion of the job, as is customary when dealing with independent contractors.

The record does not show whether Rasmussen received the same salary from defendant before entering into the agreement as he did during the time of the agreement, or whether his salary was the same after he completed the courthouse work or was more or less. This evidence was peculiarly within the knowledge of the defendant, and was material to the case. If Rasmussen received a greater salary while working under the agreement with defendant than before, it would have been greatly in favor of defendant; otherwise, if the salary had been the same before the agreement was entered into and the same since completing the courthouse job, it would have been greatly against the defendant.

Failure of plaintiff to produce this testimony and the failure of Rasmussen to testify in the case, although in the employ of defendant and subject to its orders, leads us to assume that testimony of this character and Rasmussen's testimony would have made against the defendant.

"The test of the relationship is the right to control. It is not the fact of actual interference with the control but the right to interfere that makes the difference between an independent contractor and a servant or agent." 26 Cyc. 1547; Dick vs. Gravel Logging Co., supra; Moffet vs. Koch, 106 La. 371, 31 So. 40.

The test is, not whether the employer exercises control, but whether he has the right to exercise control. According to the testimony of Mr. Ferguson, president of defendant, he does not exercise control over Rasmussen at any time, although he is employed as a foreman. His testimony is as follows:

"Q. Now, Mr. Ferguson, you said something a little while ago about Mr. Rasmussen being in Houma?
"A. I said that he might be in Houma, but he would only be there an hour or so to get one contract started and then would be back in New Orleans.
"Q. He goes where you, as president, tell him to go?
"A. Not necessarily.
"Q. Who does he work under?
"A. He works under me, but he keeps the works going; he is supposed to direct the work.
"Q. You do not tell him what to do?
"A. Only in the way of order tell him when he starts a job and when it should be completed and he uses his own judgment as to how to handle it.
"Q. You do not direct him?
"A. No, sir; not that closely."

Corporations perform their duties through their agents and employees, and it is readily seen that Mr. Rasmussen is the agent and employee through whom the defendant performs its construction work.

The evidence shows that the defendant did not interfere with Rasmussen in the manner of handling the erection of steel on the courthouse job, and that it does not interfere with him now except to tell him when to start a job and when it should

be completed. According to the testimony of the president of defendant, he runs a job as though it were his own; hires the workmen and discharges the workmen, the same as he did on the courthouse job in Shreveport. However, that does not mean that the defendant has not the right to interfere with the manner in which he handles the job.

Can any one doubt that, if Rasmussen had loafed on the job and delayed the delivery of the steel work on the courthouse, or if his payroll had been exorbitant, the wages paid being greatly in excess of the schedule of wages prevailing at that time, that defendant would not have interfered? It had the right to interfere and exercise control. There is no proof to the contrary and no allegation in the pleadings to the contrary. Defendant alleged and proved that it did not exercise control over him, but not that it did not have the right to exercise control, which is the test.

The burden of proof was on defendant to prove that the work was performed by an independent contractor and not by any employee. 14 R. C. L. 78; E. C. Taylor Co. vs. N. Y. & C. Mail S. S. Co., 159 La. 381, 105 So. 379, 381.

The testimony, in our opinion, fails to show with reasonable certainty that Rasmussen and Rasmussen Construction Company was an independent contractor.

In the language of the court in the case of Rheinwald vs. Builders' Brick Co., 168 App. Div. 425, 153 N. Y. S. 589, we say, common sense and regard for the actualities should be potent on this issue, rather than technical distinctions and elaborate refinements. Rasmussen really was a foreman for the defendant, the same as he was before entering into the agreement,

and the same as he was after completing the job under the agreement. The sum which he received each week for his duties as foreman or superintendent of the job was, in an economic sense, wages, and not profits. He had no helpers on whose work he made a profit.

This suit was filed on the 27th of December, 1927, and the first disclosure that defendant was claiming that Rasmussen was an independent contractor was in the answer filed on the 28th day of April, 1928, after the twelve-month prescriptive period had run. If the defendant was serious in its contention, it seems to the court that it would have disclosed to the plaintiff before suit, or certainly immediately after suit was filed, that Rasmussen was the party liable and not it. This it failed to do. The agreement between defendant and Rasmussen was not of record, and plaintiff could not have had knowledge of its existence. It was plainly the duty of defendant to make known that Rasmussen was an independent contractor if he in fact was.

In the case of E. C. Taylor Co. vs. N. Y. & Cuba Mail S. S. Co., supra, the court said:

"It was plainly the duty of this defendant to have made known to plaintiff company the fact that the rails were unloaded by an independent contractor, if such was the fact."

In that case the court cites the case of Branson vs. Wirth, 17 Wall. 32, 20 L. Ed. 566, wherein the court held:

"When one by his acts or representations, or by his silence when he ought to speak out, intentionally or through culpable negligence induces another to believe certain facts to exist and to act accordingly, he is estopped."

There is no plea of estoppel filed in this case, but the court will not be impressed with the good faith of the defense where the defendant has so signally failed in its duty to plaintiff. The contract with Rasmussen was clearly a subterfuge. Defendant's policy was that of "open shop," and it could use the contract with Rasmussen as a shield for employing union labor. The rule governing such contracts is properly stated in 39 Corpus Juris 37, sec. 2, at page 28:

"And the mere fact of nominal employment by an independent contractor will not relieve the master of liability where the servant is in fact in his employ. Where an independent contractor is created or is operating as a subterfuge an employee will be regarded as a servant of the principal employer."

Plaintiff, a lady about thirty years of age, while walking on Marshall street in the city of Shreveport, on the side opposite the courthouse, was struck by a flying rivet that had been driven out of the steel work then in progress on the new courthouse building. The workmen were on that day knocking out defective rivets, and, to use the parlance of the steel workers, they were "shooting rivets." There was no other work of that kind going on in that immediate vicinity and no other possible way for the rivet to have shot across the street, unless it was caused by this work. In "shooting rivets" they use a hammer driven by compressed air, and the evidence shows that one other rivet came across the street after the plaintiff was struck.

Plaintiff was struck by the rivet on the calf of the leg; her stocking was slightly torn, and her leg cut enough to cause the blood flowing from the wound to attract attention. The wound itself was not serious. Plaintiff turned and retraced her steps for

432

a short distance, and went into a jewelry store where her husband was working. She was very nervous, and was carried to a sanitarium, where she was treated and sent to her home, due to the crowded condition of the sanitarium at the time. She was highly nervous that night, necessitating the attention of a doctor, who administered opiates to her in order to quiet her. The next day she was taken to the sanitarium, and remained in the sanitarium for a period of ten days, during which time she suffered from a hemorrhage of the uterus, and she had been very nervous and unstrung from that day until the time of the trial. At the time she was injured she weighed around one hundred and forty pounds and weighed at the time of the trial about one hundred and fifteen pounds. All doctors who testified said she was not a well woman. However, some of the doctors do not think the injury she received had anything to do with her condition. Others attribute her condition to shock from the said injury.

The evidence shows that she was a healthy, robust woman before she received the injury, that she was immediately taken to the sanitarium, and that she has been a sick woman ever since. She was injured by the carelessness of the employees of the defendant. The jury saw the plaintiff and heard the testimony before arriving at their verdict, and we are reluctant to disturb the verdict of a jury unless the same is clearly erroneous; and the district judge gave his approval to the verdict of the jury when he signed the judgment.

While we do not feel justified in increasing the judgment, as asked for by plaintiff, we likewise do not feel justified in reducing the judgment.

Plaintiff has asked that the judgment be amended by allowing legal interest from judicial demand instead of from date of verdict of the jury. We think that she is entitled under the law to have the judgment bear interest from judicial demand until paid.

It is therefore ordered, adjudged, and decreed that the judgment of the lower court be amended by allowing interest at the legal rate from judicial demand, until paid, instead of from date of verdict of the jury, and, as so amended, that the judgment of the lower court be affirmed; appellant to pay cost of appeal.