**CRYSEL et al. v. GIFFORD–HILL & CO., Inc.***

**No. 4914.**

Court of Appeal of Louisiana.   Second Circuit.

Jan. 9, 1935.

---

Thornton, Gist & Richey, of Alexandria, and Spearing & McClendon, of New Orleans, for appellant.

Polk & Robinson, of Alexandria, for appellees.

TALIAFERRO, Judge.

R. W. Briggs & Co. had a contract with the Louisiana Highway Commission to construct a concrete highway, including grading of roadbed, clearing and grubbing the right of way, and construction of drainage structures, from Choppin to a point south of the village of Lena, in Rapides parish. This company sublet to defendant, Gifford-Hill & Company, Incorporated, what is referred to as the "dirt work," retaining for itself the laying of the concrete after the roadbed had been put in condition for such to be done. Defendant then sublet a part of the dirt work to one Mose Whitehead, who was engaged in ex-ecuting his contract when the accident out of which this litigation arose occurred.

Before daylight the morning of November 11, 1931, the plaintiffs, employees of R. W. Briggs & Co., accompanied by two fellow workmen, started to their work in Crysel's Ford roadster, by him driven. They were proceeding south on the concrete highway and, when near the village of Lena, their car was run into by a truck going north, alleged to have been owned by defendant and operated by one John Bradley, alleged to be defendant's employee and on a mission for it at the time. Plaintiffs suffered personal injuries for which they sue separately for damages, and for physician's bills for services made necessary to them by the accident. They allege that the sole and proximate cause of the collision between the truck and car was the negligence, carelessness, and recklessness of defendant's employee, Bradley, in the driving and operating of the truck, among others, in these respects, to wit:

1. That the truck was being driven without lights.

2. That the truck was being driven at a speed of from 40 to 45 miles an hour.

3. That the truck was being driven on the wrong or left side of the road.

4. That no proper lookout was being kept by the defendant's truck driver.

5. That the speed of defendant's truck was such that its driver could not stop it within the scope of his view.

Defendant denies that the truck which collided with Crysel's car was owned by it and denies that Bradley, the driver thereof, was its agent, servant, or employee. It is affirmatively averred that a part of the dirt work on said highway was sublet by it to Mose Whitehead; that under the contract between them Whitehead was to have full charge and control over the work which he was obligated to perform; that he owned his own vehicles and hired his own men, and exercised complete control over them; that the doing of said work by him was free and independent from any control or direction of defendant; that said truck was owned and controlled by Mose Whitehead and his employees, and was being driven by his employee when the collision occurred; and that said employee was paid by Whitehead from his own funds and was not under the control or direction of defendant or its agents or employees, nor. was he on a mission for it. In other words, Whitehead is described as an

"independent contractor." It is further averred that Crysel was driving his own car, when the accident occurred, in a reckless and negligent manner and at an excessive rate of speed, without lights, and on the wrong side of the road; and that therefore he was guilty of contributory negligence which, in the alternative, is pleaded in bar of plaintiffs' right to recover.

Plaintiffs prevailed in the lower court, and from judgments awarding them substantial damages, defendant appealed. Plaintiffs here pray for increases in the judgments in their favor.

Plaintiffs first instituted suits against R. W. Briggs & Co. under the Workmen's Compensation Law (Act No. 20 of 1914, as amended), which were dismissed on exceptions of no cause of action. (La. App.) 146 So. 489. The present suits were then instituted, and from adverse judgments appeals were prosecuted by defendant to this court. The judgments were reversed and the cases remanded for the purpose of admitting testimony offered by defendant, but excluded by the trial court, on the issue of agency. (La. App.) 151 So. 674. The case is now before us on all the issues raised by the pleadings.

The lower court found and held that Mose Whitehead was not an independent contractor, but an employee of defendant, and that the collision resulted from the negligence of Bradley in that he was driving the truck on a foggy morning before daylight, without lights, too fast in the conditions existing at the time, and did not keep his side of the road.

■ Bradley testified that the lights of his truck were burning brightly, but that Crysel's car had no lights at all. Plaintiffs and one of their two companions as witnesses admitted that the regular lights on the Crysel car were not burning, but that they had attached a hunting lamp to the top of the left fender, and from its reflection were able to travel at a slow rate of speed down the highway, seeing their way as they moved along. They say further that Bradley was driving his truck rapidly and had no lights at all, and drove head-on into the Crysel car. No other persons saw the accident, except the other workman with plaintiffs. He did not testify in the case. Bradley's evidence stands alone against the others. The car was struck on the left side of its front end and partly knocked on to the dirt shoulder of its side of the road. The truck being the heavier of the two vehicles and going at a speed much greater than the car, this result would be expected. It remained on the pavement. The hunting lamp, claimed to have been on the Crysel car, was damaged by the impact, and was found after the collision near or at the spot where it occurred.

The testimony of plaintiffs and their witnesses clearly fastens responsibility for the collision on Bradley, and establishes with equal certainty lack of negligence on the part of Crysel of such character to even bar recovery by him. The physical conditions at the situs of the collision after the accident fairly well support their version of it. While Bradley testified on direct and redirect examination that the Crysel car was not on its side of the road, but on his, when the collision occurred, yet on cross-examination he gave the following surprising testimony:

"Q. Now, you say you were going down the middle of the road about 15 miles an hour? A. I was on the right hand side of the road when struck.

"Q. And you stayed on your right hand side of the road all the time? A. Yes, sir, until struck.

"Q. And when it struck you were in the middle of the road? A. Yes, sir.

"Q. Then you left your right hand side of the road just before the accident? A. Yes, sir.

"Q. And started over to the left hand side of the road? A. Yes, sir.

"Q. And before you got all the way over to the left hand side of the road you ran into this car—that is correct, isn't it? A. Yes, sir."

Whatever else may be said of the testimony given by this witness, certainly these patent contradictions therein go far toward destroying the probative weight of his testimony as a whole.

The trial judge experienced no difficulty in reaching the conclusion that the collision occurred in the manner and for the reasons urged by plaintiffs. We think the evidence abundantly sustains him.

Under the contract between Whitehead and defendant, he was obligated, among other things, to do certain finishing work on the shoulders of the road, after concrete had set, and to clear the right of way of trees and other obstructions and remove grubs therefrom. The contract was limited to certain sections of the highway. For handling dirt, Whitehead was paid a definite price per yard, and for clearing and grubbing, he was entitled to a fixed amount per acre. As this road was being constructed for the Louisiana

Highway Commission, necessarily, the finishing work thereon had to be of such character as to meet the requirements of the contract held by Briggs & Co. The record does not disclose the period within which Whitehead was to complete his contract. Of course, there was a time limit in the contract of Briggs & Co., for completion of the entire project. While the aggregate amount paid Whitehead for work done under his contract exceeded $23,000, he was not required to furnish bond for the faithful performance of its conditions. It is reasonable to suppose, in view of his financial condition, that he could not have provided bond had such been exacted.

■ The burden of establishing the defense that the immediate employer of an injured workman was an independent contractor with respect to his relation to the contractee or subcontractee, when advanced as a means of escaping liability, rests upon the one pleading it. It is a special defense of an affirmative character. Goetschel v. Glassell-Wilson Co. et al., 13 La. App. 424, 127 So. 81; E. C. Taylor Co. v. New York & Cuba Mail S. S. Co., 159 La. 381, 105 So. 379; 14 R. C. L. 78.

There is no set rule for determining whether or not a person performing work for another, under contract specifically limiting the extent and character of the work to be done and fixing the basis of compensation therefor, is an independent contractor, within the purview of the law. No one test is conclusive of such status. Many factors enter into the question. Dick v. Gravel Logging Co., 152 La. 993, 95 So. 99.

■ The presence or absence of one or more of them is not necessarily decisive of the fact. Each ·case· depends upon its · own peculiar facts. As a rule, the fact that the contractor does· not exercise detail supervision of and active control over the work as.it progresses toward completion ·and has not the right to do so, and that he is concerned primarily in the result, not the means to the end, characterizes the subcontractor as being independent. The terms and conditions of the contract itself, and the attitude of the parties thereto toward its execution, go far toward defining the contractor's status with reference to his independence or lack of it.

■ It appears that Mose Whitehead began road construction work under defendant in the state of Texas in 1928. When he came to Louisiana to begin the work covered by his contract with defendant, he was due it an amount in excess of $2,000, and was without credit or cash resources. To prevent him and his work stock from starving, according to defendant's vice president, and in the hope of recovering the amount he was already due defendant, he was given the contract in question. In keeping with the terms of the contract, each month or oftener, defendant would advance the money necessary to take care of the pay rolls. This was done by is-. suing checks directly to the workmen. Whitehead himself was limited to draw $75 each month for his personal account. All groceries, foodstuffs, and other goods, wares, and merchandise needful to the carrying on of the road work, were purchased by Whitehead or his agents and charged directly to defendant and promptly paid for by it. All of these cash advances were charged to Whitehead, and as his work progressed, he was, from time to time, credited with what he had earned therefrom. He brought with him to this work over twenty mules and some light. road construction equipment. He purchased eleven more mules from defendant and at times leased some heavy equipment from it. He also leased some equipment from Briggs & Co., the rent on which was paid by defendant and charged to him. He hired and fired his own workmen and fixed the rate of their compensation. He personally supervised and directed his forces in the conduct of the work. It is not denied that defendant's superintendent had and exercised general supervision over the operations of Whitehead, as was the case with all other subcontractors doing like work. This superintendent would give orders at times as to where the work should be done so that men and teams would not interfere with the pouring of concrete on the subgrade by Briggs & Co., but it is not shown that he exercised any other control or supervision over the men or teams. At this juncture, it is well to state that Briggs & Co. and defendant were both contractually bound to do the very work Whitehead was engaged to do: ·'The former was directly obligated to the Highway Commission in this respect, and defendant was bound to Briggs & Co. in the same manner. Therefore the supervision and general control exercised by defendant's superintendent over the work was not to be unexpected and certainly did not affect to any material extent Whitehead's independence while executing his contract. A satisfactory final result was the objective of such. The commission exercised the same supervision over the en-

tire project. This sort of supervision and control, as a rule, is always retained by a person who undertakes, by contract with another, to erect any expensive building or other structure. It is done to guarantee that the work will be executed according to plans and specifications furnished by the contractee. See Beck v. Dubach Lumber Co., 171 La. 423, 131 So. 196, 197, wherein it is said:

"And our own courts have repeatedly held that the mere fact that a proprietor retains general supervision over work to be constructed for him by another, for the purpose of satisfying himself that the contractor carries out the stipulation of his contract, does not make him (the proprietor) responsible for the wrongs done to third persons in the prosecution of the work. Lutenbacher v. Mitchell-Borne Const. Co., 136 La. 805, 67 So. 888, 19 A. L. R. 206; Robichaux v. Morgan's L. & T. R. & S. S. Co., 131 La. 727, 60 So. 206; Robideaux v. Hebert, 118 La. 1089, 43 So. 887, 12 L. R. A. (N. S.) 632; Muldry v. Fromherz, etc., 142 La. 1087, 78 So. 126."

It is forcefully urged by plaintiffs' able counsel that because of the exercise of this general control and supervision over Whitehead's operations, and because of his impecunious condition, coupled with his indebtedness to defendant and the manner and method of paying the cost of the road work, and other circumstances related herein, Whitehead was a mere foreman or employee of defendant and, therefore, defendant is responsible for the negligence of Bradley who, it is further contended, was a servant of defendant also. In view of all the facts and circumstances of this case, we are unable to agree with this position. It is not supported by the positive testimony bearing thereon. Bradley was hired by Whitehead and was operating Whitehead's truck on a mission for him when the collision occurred. He was not on defendant's pay roll at all. Whitehead, so far as the record discloses, performed no manual labor in executing his contract with defendant. In the performance of the work, he was not interfered with to any extent by defendant or its agents. An attempt was made to establish that defendant removed some laborers from some equipment it leased to Whitehead and put others thereon. This was satisfactorily explained. Whitehead leased the equipment with the men from defendant for a definite price per hour. Defendant's regular operators of this equipment were absent or otherwise engaged when Whitehead first used it. He employed two of his own workmen thereon. These were replaced by defendant's operators as soon as they appeared for work.

■ It is doubtless true, as contended, that defendant evinced an unusual interest in Whitehead, which is reflected from its liberal attitude in advancing the funds necessary to carry on his operations. Defendant had a selfish purpose to serve in doing this, and in the effort to recoup past losses from dealings with Whitehead, experienced an additional loss of $3,000 in the present instance. However, the fact that the owner or proprietor or contractee advances money from time to time to the contractor, to enable him to fulfill his engagement, does not, of itself, convert his status into that of servant if there are present other elements and factors sufficient to characterize him as being an independent contractor. Cole v. Louisiana Gas Co., 121 La. 771, 46 So. 801.

■ The books are replete with cases containing definitions of "independent contractor," when they are such, and what is necessary to produce such a relation to the contractee and the public. These do not always fit a given case because of difference in facts. For the purpose of the present case the following definition appears to us to be appropriate:

"One contracting to do certain work according to plans and specifications prepared by the contractee, but who exercises full control as to the method of doing the work, save that it must be up to a certain standard, is an 'independent contractor,' for whose actions the contractee is not liable, though he exercises some supervision over the work to see that it is done according to contract." Denny v. City of Burlington, 155 N. C. 33, 70 S. E. 1085.

■ In the instant case, Whitehead's contract called for the performance of a definite volume of work, at a definitely fixed scale of compensation, to be done according to plans and specifications provided by a state agency. His duties were in their nature somewhat perfunctory. The effect of any control or supervision exercised over his operations was largely confined to the place of such operations. Such general control and supervision, in view of the facts of the case, did not destroy his character of independent contractor, and this, too, regardless of the fact that he was wholly dependent upon his contractee (defendant) for financial support to enable him to begin and carry on the work.

We think defendant has sustained the burden of proof in support of its special defense,

and that the judgments appealed from should be reversed.

Accordingly, for the reasons assigned, said judgments are annulled, avoided, and reversed, and plaintiffs' suits dismissed.