FRUGÉ, Judge ad hoc.
Plaintiff, Hiram Doyle, brought suit against the Royal Indemnity Company, a foreign corporation, for the sum of $3,-784.40. He alleges that on July 4, 1951, at about the hour of 1:00 P. M., he was driving his truck on the Pitkin-Sugar Town Road' in a northerly direction; that the road was straight, and that at a point approximately one and a half miles from Pit-kin, there approached from the opposite direction a truck driven by James E. Cooper; that when the truck driven by Cooper reached a point within a few truck lengths of plaintiff, that Cooper’s truck veered to the left. onto plaintiff’s; side of the highway and struck .plaintiff’s .truck; that plaintiff pulled to the right as far as he could, but that Cooper continued on on the wrong side of the road and collided with plaintiff.
Plaintiff alleges that at the, time of the accident that Cooper was employed by W. R. Core, and that W. R. Core had a policy . of insurance under the terms of which the defendant company agreed to pay for any damages or personal injuries caused by the negligent operation of the truck operated by James E. Cooper, as an employee of Core. Plaintiff alleges that Cooper was in the course of his employment at the time.
Plaintiff prayed for damages, as itemized in his petition, totaling $3,784.40.
The defendant insurance company says, first, that it is not liable to plaintiff because it insures pnly Core, and not Cooper; that Cooper was an independent contractor and not Core’s employee; that. Core is not liable and, therefore, it is not, liable as Core’s insurer. The defendant contends also that if Cooper was negligent then so was plaintiff, because the accident apparently occurred when each driver was hugging the middle of the road when visibility was practically zero on account of the dust. Contributory negligence was pleaded in bar of plaintiff’s claim.
Defendant insurance company prayed for dismissal of plaintiff’s suit.
The trial court awarded judgment in favor of plaintiff and against insurance company, itemized totaling the sum of $1,-714.10.
From this judgment defendant, Royal Indemnity Company, appealed to this Court.
Plaintiff testified that on the day of the accident Mr. Bardwell was ahead of him about one hundred yards; that as he drove down the road he met Mr. Cooper’s truck approaching from the opposite direction and that Mr. Cooper’s truck suddenly pulled to his left and collided with plaintiff’s truck, striking it on the left side. Plaintiff further testified that he was entirely on his right side of the road. ■ Pie further testified that he was driving about *661 35 miles per hour at the time of the accident. He also testified that the motor patrol had come down his side of the road, being a gravel road, but that the other side had not been dragged and that the grading of the road had piled up dirt and gravel, which dirt and gravel was on Cooper’s side, or the west side.
Plaintiff further testified, that he took his foot off the accelerator. and applied, his brakes and pulled, to the .right as far.as he could to avoid the accident when he saw Cooper come over to' his side.
There were no eyewitnesses to the accident except the drivers of the two trucks involved in the collision. Three other witnesses testified that there was broken glass, bolts and debris caused from the wreckage .found entirely on plaintiff’s side of the road. . They further testified that plaintiff’s truck was on his right side and that Cooper’s vehicle was in the ditch on his left side of the road. They further corroborated plaintiff’s testimony that the road had been graded on plaintiff’s side and the other side was not.
The testimony of these witnesses- together with the physical facts testified to by these witnesses show to our satisfaction that the accident tqok place on plaintiff’s right side of the road and that of necessity the other truck driven by Cooper crossed over on plaintiff’s side and. collided with plaintiff.
At this point it is well to observe the findings by the Trial 'Court, which are as follows:
“As to the cause of the accident, we have little doubt as to what happened. The writer has experienced many times the beneficial effect that the dragging of a gravel road has on smooth driving, especially where the road is worn and full of chuck holes. In traveling a gravel road, especially in the summer time, where only one side has been recently graded, it is observed that most of the traffic will travel on the smooth side of the road. . It is my opinion that Cooper was either straddle of the pile of gravel that had been deposited about the middle of the road or was more to the - left hand side when the collision occurred.
“We Observed the demeanor of the fellow employees of both Doyle and Cooper during the trial of' this case, to-wit: Bardwell, Cloud, Thompson, and Edwards. According to their version of the physical facts immediately after the accident, we can reach no other- conclusion than that Doyle was on his right,.or proper side of the road, and that Cooper was in the middle of the road or a little to the left, or east side. .Cooper, himself, in effect, says he does not know what happened. As to the testimony of Trooper ,M. H. Lewis, it will be noted that he did not arrive at the scene until some hour and a half after the accident and his testimony, was too emphatic to be very impressive, particularly so wherein he stated that he knew exactly where ■ the impact occurred and the speed of Doyle’s vehicle.”
We- are inclined: to agree with the Trial Judge on his findings on the facts as to how the accident occurred.
We now approach the question of whether or' not plaintiff is an independent contractor. On that issue plaintiff relies on the ruling of this Court in the case of Olano v. Leathers, La.App., 2 So.2d 486, 491. The trial court agreed that the ruling in the Olano cáse is controlling of' the facts and issues of the case at Bar. The pértinent part of the Olano case is as follows :
“In American Jurisprudence, Vol. 27, p. 486, Section 6, it is stated that ‘the most important test in determining whether a person employed to do certain work is an .independent contractor or mere servant is the control over the work which is reserved by the employer.’ An application of this test leads to a second reason why we think the relation did not exist in this case. The facts as shown to exist indicate a rather large degree of control and supervision by Leathers over the manner in which the work of hauling these shells was to be performed. The trucks had to be loaded and the shells .dumped under the direction of his men and the drivers were given certain instructions coming from him about their manner of driving over the road *662 crossings. What gasoline and oil was required was ordered and distributed by him at an added responsibility and trouble on his part. The drivers were carried on his pay rolls with the view no doubt of seeing that their time was properly kept. Whilst he did not give them formal instructions to follow the route which they did in hauling the shells, and counsel maintain that Edwards could have routed them over any road he pleased, no matter how long, the fact is that Leathers, at considerable expense to himself kept up a public road for - the purpose of hauling the shells and that leaves us with the impression that that is the road he intended they had to use:
“In Coon v. Monroe Scrap Material Company, La.App., 191 So. 607, 610, the Court stated: ‘It is fundamental to the existence of this relationship (that of independent contractor) that there must be absolute independence of action on the part of the contractor in the execution of the work assumed by him. If the contractee has the power to interfere with or control the manner of execution or performance, then the contractor ceases to be independent. His status degenerates into that of an employee or servant.’ The case of Gallaher v. Ricketts, La.App., 187 So. 351, is cited as authority. In American Jurisprudence, supra, it is stated that, ‘it is not, however, the fact of actual interference or exercise of control by the employer, but the existence of the right or authority to interfere or control, which renders one a servant rather than an independent contractor.’ We think that enough has been shown in this case to conclude that such right or authority did exist on the part of the contractee, J. C. Leathers.”
In the recent case of Lennox v. Standard Acc. Ins. Co., La.App., 51 So.2d 347, this Court at page 351 cited the Olano case with approval, the pertinent part we quote:
“Counsel for plaintiff relies strongly upon the case of Olana v. Leathers, decided by this Court and reported in 2 So.2d page 486, which we recognize as very similar from a factual standpoint, and is good authority for our conclusion under the. facts in the present case.”
We are of the opinion that the holding in the Lennox case is controlling here, the facts being very similar. .
In this case the evidence showed that Core told them when to go to work; when to quit; where to pick up the gravel and where to dump it; bought their gas for them; bought their insurance for them; reprimanded them when they didn’t drive like he felt they should; directed the amount of load they carry on their truck;, told them the route or road over which to-travel, and even sent them to various towns, to haul gravel.
It is our opinion that the amount of control Core exercised over Doyle and other employees who were hauling this-gravel is sufficient to take them out of the category of independent contractor.
Defendant relies strongly on the ruling in the earlier case of Eames v. Alexandria Contracting Co., La.App., 154 So. 510, as. well as the case of Alexander v. Frost Lumber Industries, D.C., 88 F.Supp. 516; 5 Cir., 187 F.2d 27. These cases, however, are differentiated from the case at Bar and’ the Olano and Lennox cases cited. In the Eames case the contracting company had a contract with a third party, who was to furnish the drivers and the trucks, and this third party was to select and pay the drivers. In this case Mr. Core hired and paid the truckers; directed the loading and unloading and directed the routes of travel. There was more supervision in this case and the Olano and Lennox cases than in the Eames case. The same thing is true of the case of Alexander v. Frost Lumber Industries. In that case there was a third party involved who hired the help and who. contracted as an independent contractor for the operation.
We now turn to the next point. The policy involved in this case is nothing more than a public liability and property damage policy issued for the protection of W. R. Core. It is not a workmen’s compensation policy. If plaintiff has a *663 claim against W. R. Core and his employees for personal injuries and medical expenses it would be under the Workmen’s Compensation Law, LSA-R.S. 23:1021 et seq. and not under this policy. For these reasons the amount of personal injuries and medical expenses awarded in the District Court judgment in the sum of $389.40 should he denied.
It is therefore ordered, adjudged and decreed that the judgment of the lower court be reduced to the sum of $1,325, and as thus amended it be affirmed. Costs to be paid by defendant.