GLADNEY, Judge.
This action is one in tort for recovery of damages to a dump truck driven by Fred Anette Ainsworth, which was involved in a collision with a similar truck operated by Dan Guin. The accident occurred August 13, 1951, on a dusty, graveled road in Caldwell Parish. Made defendants in this cause are Henry & Hall, a partnership, its individual members Reginald T. Henry and Melvin Hall, Jr., and their insurance carrier, The Aetna Casualty & Surety Company. Through supplementary pleadings Dan Guin and George E. McCart, owners of the truck operated by Guin, were joined as defendants. When called for hearing this case was consolidated for trial with the suit of Fred Anette Ainsworth against the same above named defendants, which case is La.App., 69 So.2d 77. In that case the New Amsterdam Casualty Company intervened, as the insurer of Ainsworth’s employer, Quality Gravel Company, to secure reimbursement for workmen’s compensation paid to Ainsworth. Guin and McCart failed to plead in either action and as a result thereof default judgments against them were rendered. These judgments were not appealed and are now final. After trial judgments were rendered separately in favor of Dewey Amyx for $940, and in favor of Ainsworth for $7,500, of which amount $3,170 was directed to be paid to the inter-venor, New Amsterdam Casualty Company.
The principal issues asserted herein are: whether the negligence of Daniel Guin was a proximate cause of the accident; whether Ainsworth was guilty of contributory negligence; and whether Guin was an independent contractor and not an employee of Henry & Hall.
Most of the salient facts are not in dispute. Ainsworth was driving an empty gravel truck owned by Dewey Amyx south to a gravel pit near Jena on a dry, clear day, August 30, 1951. The graveled road he was traveling had recently been worked and there having been a sustained dry period there was created an unusually dusty condition, so much so that most of the vehicles thereon were traveling during the daytime with headlights burning to increase visibility. Another dump truck loaded with gravel belonging jointly to its driver, Dan Guin and his brother-in-law, George E. Mc-Cart, was traveling north on the same road. The two trucks traveling in opposite directions met head-on and each came to rest on its wrong side of the road.
The written reasons assigned for judgment by the judge a quo fully and accurately state the material facts bearing upon the question of negligence of Guin and Ainsworth. We approve of his findings on factual and legal issues relative to this phase of the case and adopt this portion of the opinion as our own:
“Immediately prior to the collision plaintiff’s truck had crossed the Black Bayou bridge and had climbed a fairly steep grade on which the road curved somewhat sharply to the West, but be.fore reaching the point of the collision the truck had reached almost level ground and the sharpest point of the curve had been passed, the road continuing to curve to the West gently for some distance south of the point of impact. Thus it will be seen that the inside of the curve at the point of collision was on the side of the vehicle going south while the outside of the curve was on the side of the vehicle going north. The entire width of the road, that is the level surface between the roadside of the ditch banks, was 27 to 30 feet.
“There was no obstruction of view of the approaching vehicles by the drivers of the opposing trucks for more than 100 yards from the point of impact. The weather was dry and the passing of each vehicle on the gravel road raised a substantial amount of dust. Guin testified that just a. few yards south of the point of collision, he had met another truck which had raised so much dust that he could not see the roadway, and attempted to keep his *71 car near the ditch by trying to look at the right shoulder of the road. He testified that as a result of the dust he did not see the approaching Ainsworth vehicle at all 'before the collision and was aware of the collision first by feeling the jar and then seeing the Ains-worth truck pass over the hood of his truck turning to its left as it did so.
“Ainsworth, on the other hand, testified that no vehicle had preceded him immediately and that the amount of dust was not sufficient to interfere with his unobstructed vision of the approaching Guin truck. He testified that he saw the truck when it was SO or 90 yards from his truck, at which time it was approximately in the center of the road and was swerving still further toward the west side. Ainsworth further testified that when the trucks were about 40 or 50 yards apart, the Guin truck had pulled over on his side and that he, Ainsworth, had slowed down thinking the Guin truck would return to its right side of the road. Ains-worth further testified that he was driving well on his right side of the road and maintained that position until an instant before the collision, when, realizing that the Guin truck was not going to pull over and not having room to pass further to the right, he made a last second effort to turn to the left; that immediately after his truck had turned toward the left the collision occurred.
“After the collision the Ainsworth truck came to rest on its left side with the front end toward the south and the top of the truck as it lay on its left side about even with the east edge of the road. The Guin truck came to rest still standing on its wheels with the left front wheel at a position variously estimated as being from 3 to 6 feet from the west edge of the road, being the left side of the road with relation to the Guin truck, with the rear end of the truck approximately 2 feet further from the west edge of the road than the front end. The trucks had moved past each other sufficiently so that there were 6 or 8 feet between the rear ends of the two vehicles.
“Without reviewing all of the testimony on the point, the Court is convinced that Ainsworth was not blinded nor was his vision interfered with materially by the dust of the preceding vehicle. It is possible that Guin could have been experiencing some difficulty in that respect which was not being experienced by Ainsworth. He could have been emerging from a dusty area which Ainsworth had not yet reached. The Court is not convinced that the dust was sufficient to have prevented Guin from seeing Ainsworth in ample time to have avoided the collision. However, it matters not whether Guin drove to the left side of the highway through sheer inattention or driving on the inside of a curve or if he lost his position in the road because the dust prevented his seeing the road. In either event his action in driving on the wrong side of the road constituted gross negligence.
“Essentially then, the basic issue as stated above may be summed up in the question: At what point in the roadway did the collision occur ? Guin testified positively that he could dimly see the right edge of the road and that his right wheel was within two feet of the edge of the road, while Ainsworth testifies quite positively that he was driving entirely on his right side of the road and that Guin, immediately before the collision, had driven his truck so far onto Ainsworth’s side that it was impossible for Ainsworth to pull further to his right and thus pass. Obviously these two conflicting statements cannot be reconciled.
“In addition to the physical facts which have been outlined above, it should be noted that the principal impact of the two vehicles was the right front of each with the impact centering at about the point of the right front lights and fender. The most signifi *72 cant fact is that -the Guin truck loaded must have weighed approximately three times as much as did the Ains-worth truck empty. Despite questioning several witnesses, who should have known, the Court was unable to ascertain for the record the weight of pit-run gravel and the weight of the trucks empty. The trucks were of the same model and type and presumably the same approximate weight empty. It is a simple fact of which the Court can take judicial knowledge that five yards, of pit-run gravel will weigh at least twice as much as the truck in which it is carried.
“In the light of the above physical facts, it is absolutely certain that Guin’s testimony as to the position of his truck at the time of the collision cannot be correct. Had his right wheel been within two feet of the east edge of the road as he said it was, Ains-worth’s left wheel would already have had to have been off of the road on the east side in order for' the two vehicles to have collided in the area of the right front lights of each. And in order for Ainsworth’s truck to have turned on its left side with the top of the cab approximately even with the east edge of the road, the beginning of its capsizing had to 'be at a point several feet to the west of its resting place. Furthermore, it would have been impossible for the Guin truck to have moved from its right side of the road to a point where' the truck was entirely on its left side, remaining upright, without describing a very sharp and abrupt turn to its left.
“The physical facts in the 'Court’s opinion completely refute Guin’s version and are in entire harmony with Ainsworth’s version of the position of the trucks at the time of the collision. It is a law of Physics that when two objects, at approximately the same speed with the factors of gravity being approximately equal, collide, at courses which vary slightly — from a head-on collision, if one object is considerably heavier than the other, the lighter object will be deflected- from its course sharply, whereas the heavier object relatively will be deflected only slightly from its course. That is exactly what happened in this instance. Accordingly, the Cburt concludes without any hesitancy that at the time of the collision the left front wheel of the Guin truck was within 5 to 8 feet of the west edge of the road, placing'the truck almost, if not entirely, on its wrong side of the road and that the Ainsworth truck was on its right side with its course bearing sharply to' the left. The responsibility, therefore, for this collision rests upon negligence of Dan Guin in driving on his left side of the road into the path' of an approaching vehicle, and it matters not whether said negligence was brought about from sheer inattention or the dusty condition of the road. There is no basis under the evidence upon which contributory negligence can 'be found upon the part of plaintiff Ainsworth.”
Our attention is now directed to the defense that ■ Guin was not an' employee of Henry & Hall.
The burden of establishing the defense that the immediate, employer of an injured workman was an independent contractor, with respect to his relationship to the contractee and sub-contractee, when advanced as a means of escaping liability, rests upon the one pleading it. It is a special defense of an affirmative character. See: Goetschel v. Glassell-Wilson Co., Inc., 1930, 13 La.App. 424, 127 So. 81; E. C. Taylor Co. v. New York & Cuba Mail S. S. Co., 1925, 159 La. 381, 105 So. 379; Crysel v. Gifford-Hill Co., La.App.1935, 158 So. 264.
There exists no set rule for determining whether the relationship is that of an employee or an independent con-tractox-. No one test is conclusive of such status. Many factors enter into the question. The terms and conditions of the contract itself, the attitude of the parties-thereto toward its execution, go far toward find *73 ing the contractor’s status with reference to his independence or lack of it. The weight to be accorded each factor encountered in a particular case will determine the relationship and the liability of the contractor.
It must be recognized, of course, that subject to certain exceptions, in suits for damages the liability of a principal for the torts of an individual employee must be predicated upon the doctrine of respon-deat superior. LSA-C.C. arts. 2315, 2320. And since none- of such exceptions are indicated herein, from this it follows ‘that' unless Guin is held to be its employee, Henry & Hall cannot be held liable to plaintiff Amyx.
The contract for services rendered was an oral one, about which only Guin, Mc-Cart and Dave L. .Ward were cognizant and competent to give testimony.
In his testimony Giiirr states the trade was made when he and McCart drove into the gravel pit and asked Mr. Ward if he needed any gravel trucks. Quoting the witness: “He said he did. Wé asked him what he paid. He told us $2.00 per yard and we could go to work then if we wanted to. iWe did. That was all there was to it. We got the job.” Ward’s and McCart’s testimony concerning what was said is corroborative. Ward testified: “Well, he and McCart,came up to the pit with two trucks asking if we needed any more hauling. We did. We‘can use several more. He asked what we were paying. I .told him we were paying $2.00 per yard. He asked how long the haul was. It just varied'according to way they were hauling. It was probably 30 miles. So he asked me about the gas and oil. . I said that is solely up to you — not furnishing anything.”
Between Guin and McCart, owners of the truck, the understanding was “ail truck expenses would be paid including répair bills, then an average''driving wage to be paid him, then what -was left, we ■ would divide equálly.”
Guin, McCart or Ward further testified Guin had. .the right to report to work or not at any time he chose, to determine the number of hours or days he would wqrk, to remove at will the truck, to another job, to select the route to be taken, and received no instructions from Ward other than the suggestion that headlights be allowed to burn during daytime because of dusty conditions. Gravel was loaded at a pit where Hall and Henry operated a drag line and paid a royalty to the owner of the land. The gravel was delivered at one of three destinations determined by an employee of the Louisiana Highway Department who- indicated where the load was to be -dumped and gave'; the truck driver a ticket on which he had written the number of the truck, the number of yards of gravel and the gravel pit from whence- • it had come. At the end of the week Ward gathered up the tickets and paid the truck owners accordingly. Henry and'Hall did not select the drivers of any of the trucks, did not pay their wages and kept no records on them. The only deduction from payments by Henry and Hall was for workmen’s compensation coverage.
We must recognize that .the relationship of master and servant is not easily susceptible of exact definition. Wé should, of course, observe that under the provisions in the Workmen’s Compensation Act, LSA-R.S. 23:1061, 23:1062 and 23:1063, the principal is in certain instances made responsible for workmen’s compensation to an employee of an independent contractor, but is entitled to reimbursement from the party otherwise responsible therefor. -Such cases must be distinguished from purely tort cases not directly involving the Employer’s Liability Act.
In- Restatement of the Law, Agency, par. 220, the definition of servant and factors for determining whether one is acting for another as a servant or an-independent contractor are-set-forth’: ' ■ ■
“(1) A servant is a person employed to perform service for another in his affairs and who, with respect to his physical conduct, in the performance of the service, is subject to the other’s control or right to control.
*74 "(2) In ■ determining’ whether one acting for another is a servant or an independent contractor, the following matters of fact, among others, are considered :
“(a) The extent of control which, by the agreement, the master may exercise qver the details of the work;
“(b) whether or not the one employed is engaged in a distinct occupation or business;
“(c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;
“(d) the skill required in the particular occupation;
“(e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;
“(f) the length of time for which the person is employed ;
“(g) the method of payment, whether by the time or by the job;
“(h) whether’ or not the work is a part of the regular business of the employer; and
“(i) whether or not the parties believe they are creating the relationship of master and servant."
The basis for the doctrine of respondeat superior lies in the fact that the employer has the right to supervise and direct the performance of the work by his employee in all its details, and this right carries with it the correlative obligation to see to it that no tort shall 'be committed by the employee in the course of the performance of the character of work which the employee was appointed to do. The relation between parties to which responsibility attaches to one for the acts of negligence of the other, must be that of superior and subordinate. The responsibility is placed where the power exists. Having the power to control, the superior or master is bound to exercise it to the prevention of injuries to third parties or he will be held liable.
If one is hired to work for another and is subject to the control or direction of the employer only as to the result to be obtained, and is free to follow his own judgment and discretion as to the mode, manner and details of the performance of the work, he is an independent contractor and not a servant.
Counsel for plaintiff argue that Henry & Hall had the right to terminate their relationship with Guin at any time and this factor alone suffices to give Henry & Hall the power to supervise and control the actions of Guin. We do not think this inference justified. In the first place Henry & Hall could discontinue at any time the services of any independent contractor. The privilege was reciprocal. LSA-C.C. art. 2765 expressly provides:
“The proprietor has a right to cancel at pleasure the bargain he has made, even in case the work has already been commenced, by paying the undertaker for the expense and labor already incurred, and such damages as the nature of the case may require."
There are no factors arising from the agreement which apparently accorded to Henry & Hall the right to supervise or control the manner in which Guin performed his undertaking. The parties involved indeed assumed and so testified that no such right existed. It is manifest that actually Henry & Hall at no time attempted to exercise any such power. The facts presented disclose the complete independence of Guin from supervision. The views herein expressed are supported by: Eames v. Alexandria Contracting Co., Inc., La.App., 1934, 154 So. 510; Beck v. Dubach Lumber Co., Lt’d, 1930, 171 La. 423, 121 So. 196; Crysel v. Gifford-Hill & Co., La.App., 1935, 158 So. 264; Moore, for use of Chriceal v. Cochran & Franklin Co., Inc., La.App., 1941, 5 So.2d 33; Miller v. Wyatt Lumber Mfg. Co., Inc., La.App., 1941, 3 So.2d 565; Hanchey v. Consolidated Underwriters of *75 Kansas City, Mo., La.App., 1949, 43 So.2d 487; Alexander v. Frost Lumber Industries, Inc., 88 F.Supp. 516, confirmed, 5 Cir., 187 F.2d 27; Johnson v. Royal Indemnity Co., 104 F.Supp. 821, affirmed, 5 Cir., 206 F.2d 561.
Counsel for plaintiff have referred us to the following cases as being inconsistent with the views expressed herein: Gallaher v. Ricketts, La.App., 1939, 187 So. 351; rev. on other grounds, 191 So. 713; Coon v. Monroe Scrap Material Co., La.App., 1939, 191 So. 607; Olano v. Leathers, La.App., 1941, 2 So.2d 486; Collins v. Smith, La.App., 1943, 13 So.2d 72; Deason v. Coal Operators Casualty Co., La.App., 1950, 43 So.2d 630; Sones v. Southern Lumber Company, Miss., 1952, 60 So.2d 582; Doyle v. Royal Indemnity Co., La.App., 1953, 65 So.2d 659.
Gallaher v. Ricketts, supra, involved a defense by a co-defendant that Ricketts was an independent contractor. Ricketts was a young Negro route carrier for the Times Picayune Publishing Company and while driving an automobile owned by him struck the minor son of plaintiff. The contract between Ricketts and the company was in writing but was not produced upon the trial. The court presumed it would not be helpful to defendant’s contention. The evidence indicated the company reimbursed Ricketts for gasoline, oil and other expenses incurred in operating the vehicle over the route. In addition to this it operated classes of instruction. The control so exercised by the company was greater than in the instant case. The decision, however, seems to be contrary to Great American Indemnity Company v. Fleniken, C.C.A.1943, 134 F.2d 208, certiorari denied 63 S.Ct. 1167, 319 U.S. 753, 87 L.Ed. 1706, rehearing denied.
The servant relationship was held to exist in Coon v. Monroe Scrap Material Company, supra, because Ablon, the alleged independent contractor, had the power to engage in the furtherance of defendant’s business. The defendant, Monroe Scrap Material Company, furnished .the equipment to enable him to discharge the duties of the employment and provided him with funds through the payment of his drafts necessary to acquire the material. He was subject to transfer from one location to another by the defendant as long as he used its equipment. He was not free to dispose of accumulated material to anyone save defendant. All of these factors brought about the holding rejecting an independent contractor relationship.
The facts of Olano v. Leathers, supra, disclose that Leathers by a telephone conversation arranged for certain trucks owned by Edwards to be used for the delivery of shells from a barge to a certain highway project. At the barge the shells were to he loaded on trucks by means of a hopper and then transported to the site of the project where they had to be dumped and laid under directions given to the drivers of the trucks by one of Leathers’ men. Leathers provided all gas and oil for the trucks used on the job but the amount used by Edwards’ trucks was charged to him and considered in the settlement between the parties. Edwards employed his drivers but they were carried on Leathers’ pay roll and paid by Leathers. The salary so paid was later deducted by settlement. We think the decision is to be differentiated from the case at bar because of the power of control by Leathers over wages of the driver and the expenses of the truck.
In Doyle v. Royal Indemnity Company, supra, two trucks collided, one of which was driven by plaintiff and the other driven by a driver engaged by W. R. Core. In concluding that Core should be held responsible, the court said, [65 So.2d 662]:
“In this case the evidence showed that Core told them when to go to work; when to quit; where to pick up the gravel and where to dump it; bought their gas for them; bought their insurance for them; reprimanded them when they didn’t drive like he felt they should; directed the amount of load they carry on their truck; told them the route or road over which to travel, and even sent them to various towns to haul gravel.”
*76 Collins v. Smith, Deason v. Coal Operators Casualty Company and Sones v. Southern Lumber Company all present direct actions for' the recovery of workmen’s com-' pensation and, as above pointed out, are not strictly analogous because of that ground alone.
From the foregoing findings that Guin was not the employee of Henry & Hall, it follows that the judgment from which appealed should be and it is hereby reversed insofar as it imposes liability upon Henry & Hall, Reginald T. Henry and Melvin Hall, Jr., and their insurance carrier, The Aetna Casualty & Surety Company, and in all other respects the judgment is affirmed. Costs of appeal to be assessed against Dewey Amyx and intervenor, The New Amsterdam ' Casualty Company, in equal proportions, all other costs to be assessed against Géorge McCart and Daniel E. Guin.
HARDY, J., dissents, giving written reasons.